ROGER P. CROTEAU, ESQ.
Nevada Bar No. 4958
TIMOTHY E. RHODA, ESQ.
Nevada Bar No. 7878
ROGER P. CROTEAU & ASSOCIATES, LTD.
9120 West Post Road, Suite 100
Las Vegas, Nevada 89148
(702) 254-7775
(702) 228-7719 (facsimile)
croteaulaw@croteaulaw.com
*Attorney for Plaintiff*
**LAS VEGAS DEVELOPMENT GROUP, LLC**

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

***

| | |
|---|---|
| LAS VEGAS DEVELOPMENT GROUP, LLC, a Nevada limited liability company, | ) ) ) |
| Plaintiff, | ) Case No.      2:15-cv-1127-APG-CWH ) |
| vs. | ) ) |
| SHIRLEY C. YFANTIS, an individual; CRYSTALIA L.YFANTIS, an individual; WELLS FARGO BANK, NA, a National Banking Association; NATIONAL DEFAULT SERVICING CORPORATION, an Arizona corporation; MARIA BARROGA, an individual; ANASTACIA CEPEDA, an individual; SECRETARY OF THE DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, a federal governmental agency; EVERGREEN MONEYSOURCE MORTGAGE COMPANY, a Washington corporation; DOE individuals I through XX; and ROE CORPORATIONS I through XX, | ) ) **ORAL ARGUMENT REQUESTED** ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**OPPOSITION TO WELLS FARGO BANK, N.A.'S MOTION TO DISMISS**

COMES NOW, Plaintiff, LAS VEGAS DEVELOPMENT GROUP, LLC, by and through

its attorneys, ROGER P. CROTEAU & ASSOCIATES, LTD., and hereby presents its

Opposition to Wells Fargo Bank, N.A.'s Motion to Dismiss.  This Opposition is made and based

*Sidebar (rotated text):* **ROGER P. CROTEAU & ASSOCIATES, LTD.** • 9120 W. Post Road, Suite 100 • Las Vegas, Nevada 89148 • Telephone: (702) 254-7775 • Facsimile (702) 228-7719

9986 Otterburn

upon the attached memorandum of points and authorities, all pleadings, papers and documents on file herein, and any oral argument that the Court may entertain at the hearing of this matter. Because the Plaintiff believes that it may be of assistance to the Court, the Plaintiff respectfully requests that oral argument be scheduled at the Court's convenience.

DATED this _____21st_____ day of August, 2015.

ROGER P. CROTEAU & ASSOCIATES, LTD.

_/s/ Timothy E. Rhoda_
ROGER P. CROTEAU, ESQ.
Nevada Bar No. 4958
TIMOTHY E. RHODA, ESQ.
Nevada Bar No. 7878
9120 West Post Road, Suite 100
Las Vegas, Nevada 89148
(702) 254-7775
*Attorney for Plaintiff*
**LAS VEGAS DEVELOPMENT GROUP, LLC**

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

For the past several years, the purchasers of real properties at homeowners association lien foreclosure sales have been embroiled in litigation with purportedly secured deed of trust holders such as Wells Fargo Bank, N.A. (*"WFB"*) regarding the force and effect of NRS §116.3116, which provides an HOA with a superpriority lien on an individual homeowner's property for up to nine months of unpaid HOA dues.   In a nutshell, the purchasers of these properties have always asserted that HOA lien foreclosure sales served to extinguish all junior liens, including a first position deed of trust, pursuant to black letter lien law.  Mortgage holders such as WFB asserted that their security interests survived the HOA lien foreclosure sales.  The purchasers of the properties prevailed on this argument.

Until relatively recently, the conflicting positions of the purchasers and the purported secured mortgage holders were the subject of significant dispute.  However, on September 18, 2014, the Nevada Supreme Court, in the matter of *SFR Investments Pool I, LLC v. U.S. Bank, N.A.*, 130 Nev. ___, 334 P.3d 408, 2014 WL 4656471 (Adv. Op. No. 75, Sept. 18, 2014),

9986 Otterburn

ROGER P. CROTEAU & ASSOCIATES, LTD.
• 9120 W. Post Road, Suite 100 • Las Vegas, Nevada 89148 •
Telephone: (702) 254-7775 • Facsimile (702) 228-7719

definitively determined that the foreclosure of a HOA's superpriority lien does indeed extinguish a first deed of trust, stating as follows:

> We must decide whether this is a true priority lien such that its foreclosure extinguishes a first deed of trust on the property and, if so, whether it can be foreclosed nonjudicially. We answer both questions in the affirmative and therefore reverse.

Pursuant to its decision in *SFR Investments*, the Nevada Supreme Court resolved the divergent opinions that previously existed in the state and federal courts of the State of Nevada regarding the force, effect and interpretation of NRS §116.3116 *et seq*.  In doing so, the Nevada Supreme Court clarified that the statute provides a homeowners association with a true superpriority lien over real property that can and does extinguish a first deed of trust when  non-judicially foreclosed.  *Id.*  The Nevada Supreme Court also recognized that a foreclosure deed "reciting compliance with notice provisions of NRS 116.31162 through NRS 116.31168 'is conclusive' as to the recitals 'against the unit's former owner, his or her heirs and assigns and all other persons.'" *See id.* at *3 (citing NRS 116.3116.31166(2)).  Moreover, under Nevada law, the HOA foreclosure sale and the resulting foreclosure deed are both <u>presumed valid</u>. NRS 47.250(16)-(18) (stating that disputable presumptions exist "that the law has been obeyed"; "that a trustee or other person, whose duty it was to convey real property to a particular person, has actually conveyed to that person, when such presumption is necessary to perfect the title of such person or a successor in interest"; "that private transactions have been fair and regular"; and "that the ordinary course of business has been followed.").

"The SFR decision made winners out of the investors who purchased foreclosure properties in HOA sales and losers of the lenders who gambled on the opposite result, elected not to satisfy the HOA liens to prevent foreclosure, and thus saw their interests wiped out by sales that often yielded a small fraction of the loan balance." *Freedom Mortg. Corp. v. Las Vegas Dev. Grp., LLC*, 2015 U.S. Dist. LEXIS 66249, 1-2 (D. Nev. May 19, 2015).  To date, formerly secured lenders and loan servicers have been loath to accept the fact that their interpretation of NRS §116.3116 was wrong and that they had routinely allowed their security interests to be extinguished by refusing to satisfy the relatively nominal homeowners association liens that they

ROGER P. CROTEAU & ASSOCIATES, LTD.
• 9120 W. Post Road, Suite 100 • Las Vegas, Nevada 89148 •
Telephone: (702) 254-7775 • Facsimile (702) 228-7719

9986 Otterburn

**ROGER P. CROTEAU & ASSOCIATES, LTD.**
• 9120 W. Post Road, Suite 100 • Las Vegas, Nevada 89148 •
Telephone: (702) 254-7775 • Facsimile (702) 228-7719

were duly noticed with prior to the time that the subject properties were sold at auction. As a result, these lenders and servicers are now desperately seeking new bases upon which to seek to revive their now lost causes. One of these purported bases is the claim herein that N.R.S. §116.3116 *et seq*. is unconstitutional on its face. The Defendants ignore the fact that the Nevada Supreme Court has already considered and rejected this argument in an as-applied analysis.

At issue herein is real property commonly known as 9986 Otterburn Street, Las Vegas, Nevada 89178, Assessor Parcel No. 176-28-613-097 (*"the "Property"*). WFB formerly held a deed of trust recorded against the Property in the Official Records of the Clark County Recorder as Instrument No. 200808290004619 (*"First Deed of Trust"*) Complaint, ¶20-22. Plaintiff is the rightful owner of the Property, having purchased all right, title and interest in it at an HOA Foreclosure Sale dated November 17, 2010. *Id.*, ¶30-31. Pursuant to *SFR Investments*, the HOA Foreclosure Sale served to extinguish the then-existing First Deed of Trust pursuant to Nevada law.

Notwithstanding the extinguishment of its security interest, WFB purported to foreclose upon the Property on June 6, 2011. Complaint, ¶57. WFB purported to purchase the Property at the foreclosure sale (*"Bank Foreclosure Sale")* and on June 14, 2011, caused a Trustee Deed to be recorded in the Official Records of the Clark County Recorder as Instrument No. 201106140001418. *Id.*, ¶58. However, because WFB possessed no valid security interest upon which to foreclose, its foreclosure was void and ineffective. It naturally follows that any and all subsequent transfers of the Property were void and that Plaintiff remains the rightful owner of the Property.

The instant Motion is premised entirely upon an assertion that the First Deed of Trust was unaffected by the HOA Foreclosure Sale and that WFB was thus entitled to foreclose upon its First Deed of Trust. However, this assertion directly contradicts the Nevada Supreme Court's decision in the matter of *SFR Investments*. Despite the Nevada Supreme Court's determination that the foreclosure of an HOA Lien serves to extinguish first deeds of trust, WFB begs for a different result where the First Deed of Trust was secured by the United States Department of Housing and Urban Development (*"HUD"*). A different result is not called for. Moreover,

9986 Otterburn

WFB lacks standing to request such relief.

## STATEMENT OF THE FACTS

On or about April 4, 2006, a Declaration was recorded as instrument number 200604040003021, thereby creating Rio Vista Homeowners Association (*the "HOA"*) and perfecting a lien in favor of the HOA on all real property located within the common interest community it governed, including but not limited to the Property.  Complaint, ¶12.  On or about August 29, 2008, Defendants, MARIA BARROGA and ANASTASIA CEPEDA (*collectively, "Former Owners"*), acquired title to and ownership of the Property.  *Id.*, ¶12.   By virtue of their ownership of the Property, Former Owners were members of the HOA and accordingly were obligated to pay HOA assessments pursuant to the terms of the CC&Rs.  *Id.*, ¶24.   At some point in time during their ownership of the Property, Former Owners failed to pay the HOA assessments related to the Property.  *Id.*, ¶25.

As a result of the failure of Former Owners to pay the HOA assessments, HOA recorded a Notice of Delinquent Assessment Lien (*"HOA Lien"*) with the Office of the Recorder of Clark County, Nevada.  *Id.*, ¶26.  Thereafter, HOA recorded a Notice of Default and Election to Sell with the Office of the Recorder of Clark County, Nevada.  *Id.*, ¶27.  Upon information and belief, the Notice of Default and Election to Sell was served upon the Former Owners, as well as all interested parties holding a security interest in the Property.  *Id.*, ¶28.

After the expiration of 90 days from the recording and mailing of the Notice of Default, HOA caused a Notice of Trustee's Sale to be recorded with the Office of the Recorder of Clark County, Nevada.  *Id.*, ¶29.  Upon information and belief, the Notice of Trustee's Sale was served upon the Former Owners, as well as all interested parties holding a security interest in the Property.  *Id.*, ¶30.  On or about November 17, 2010, HOA caused a foreclosure sale (*"HOA Foreclosure Sale"*) to be conducted pursuant to the powers conferred by the Nevada Revised Statutes 116.3116, 116.31162, 116.31163 and 116.31164; the CC&Rs; the Notice of Delinquent Assessment Lien; and the Notice of Default and Election to Sell.  *Id.*, ¶31.

Plaintiff purchased the Property by successfully bidding at the HOA Foreclosure Sale in accordance with N.R.S. 116.3116, *et seq.  Id.*, ¶32.  On or about November 17, 2010, a Trustee's

9986 Otterburn

Deed Upon Sale (*"HOA Foreclosure Deed"*) was recorded in the Official Records of the Clark County Recorder as Instrument No. 201011170002193, vesting title to the Property in the name of Plaintiff.  *Id.*, ¶33.  A copy of the HOA Foreclosure Deed is attached hereto and incorporated herein by reference as Exhibit 1.  The Court may take judicial notice of the documents attached hereto because they are public and  "[c]apable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned..." NRS 47.130 (2)(b);  *see also Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) ("court may take judicial notice of matters of public record.").   The HOA Foreclosure Sale complied with all requirements of law, including but not limited to, the recording and mailing of copies of the Notice of Delinquent Assessment and Notice of Default, and the recording, posting and publication of the Notice of Sale.  Complaint, ¶34.  See also Exhibit 1.  The Plaintiff was thereafter the owner of the Property, free and clear of any claims or encumbrances of the Defendants.

While the foregoing facts are important as a matter of background, they are not particularly relevant to much of the instant Motion.  In a last ditch effort to salvage its forfeited First Deed of Trust in the face of the Nevada Supreme Court's decision in the matter of *SFR Investments*, WFB has chosen to argue that N.R.S. Chapter 116 is unconstitutional on its face.  Were this the case, one would think that the Nevada Supreme Court would have noted the same during the course of its detailed analysis of the statute in the matter of *SFR Investments*.   It did not.  On the contrary, the Nevada Supreme Court specifically held that the lender's due process rights were <u>NOT</u> violated by the HOA Foreclosure Sale in the matter of *SFR Investments*.  Under these circumstances, it is readily apparent that N.R.S. 116.3116 *et seq.* cannot be facially unconstitutional.

## LEGAL ARGUMENT

**1.**   **STATEMENT OF THE LAW**

Pursuant to Fed. R. Civ. P. 12(b)(6):

Dismissal for failure to state a claim is proper ***only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief***. <u>See</u> *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the

9986 Otterburn

ROGER P. CROTEAU & ASSOCIATES, LTD.
• 9120 W. Post Road, Suite 100 • Las Vegas, Nevada 89148 •
Telephone: (702) 254-7775 • Facsimile (702) 228-7719

ROGER P. CROTEAU & ASSOCIATES, LTD.

• 9120 W. Post Road, Suite 100 • Las Vegas, Nevada 89148 •
Telephone: (702) 254-7775 • Facsimile (702) 228-7719

plaintiff. See *Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).

*Williams v. Foster*, 2013 U.S. Dist. LEXIS 142878, 4 (D. Nev. Oct. 2, 2013) (emphasis added).

Well pleaded factual assertions as entitled to the assumption of their veracity. *Id.* at 5, citing

*Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).   The burden to

show that no claim exists lies with the moving party. *Total Benefits Planning Agency, Inc. v.*

*Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008).

   To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim

to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct.

1955, 167 L. Ed. 2d 929 (2007).  This "plausibility standard," however, "asks for more than a

sheer possibility that a defendant has acted unlawfully," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129

S. Ct. 1937, 173 L. Ed. 2d 868 (2009), and "[w]here a complaint pleads facts that are 'merely

consistent with' a defendant's liability, it 'stops short of the line between possibility and

plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).   Under *Twombly*, a

complaint that offers "labels and conclusions, . . . a formulaic recitation of the elements of a

cause of action[,]" or "naked assertion[s]" devoid of "further factual enhancement" will not

suffice. *Twombly*, 550 U.S. at 555, 557.

   The determination of whether a statute is constitutional is a question of law. *Flamingo*

*Paradise Gaming, LLC v. Chanos*, 125 Nev. 502, 509 (Nev. 2009) (Citations omitted).  "Statutes

are presumed to be valid, and the challenger bears the burden of showing that a statute is

unconstitutional." *Id*.  The court must interpret a statute in a reasonable manner, that is, "[t]he

words of the statute should be construed in light of the policy and spirit of the law, and the

interpretation made should avoid absurd results." *Id*. (Citing *Desert Valley Water Co. v. State*

*Engineer*, 104 Nev. 718, 720, 766 P.2d 886, 886-87 (1988).  In reviewing a statute, it "should be

given [its] plain meaning and must be construed as a whole and not be read in a way that would

render words or phrases superfluous or make a provision nugatory." *Mangarella v. State*, 117

Nev. 130, 133, 17 P.3d 989, 991 (2001) (internal quotation omitted).

   When making a facial challenge to a statute, the challenger bears the burden of

demonstrating that there is no set of circumstances under which the statute would be valid. *Deja*

9986 Otterburn

**ROGER P. CROTEAU & ASSOCIATES, LTD.**
• 9120 W. Post Road, Suite 100 • Las Vegas, Nevada 89148 •
Telephone: (702) 254-7775 • Facsimile (702) 228-7719

*Vu Showgirls of Las Vegas, LLC v. Nev. Dep't of Taxation*, 334 P.3d 392 (Nev. 2014). "Facial Challenges are disfavored for several reasons. Claims of facial invalidity often rest on speculation. As a consequence, they raise the risk of premature interpretation of statutes on the basis of factually barebones records.' … Facial challenges also run contrary to the fundamental principle of judicial restraint that courts should neither ' "anticipate a question of constitutional law in advance of the necessity of deciding it' " nor ' "formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." ' " *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450–451 [170 L. Ed. 2d 151, 128 S. Ct. 1184] (2008), citations omitted.) Furthermore, facial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution. *Id.* at 451.

## 2. THE STATUTE OF LIMITATIONS HAS NOT EXPIRED WHERE THE BANK FORECLOSURE SALE WAS VOID FROM THE OUTSET

As a preliminary matter, Plaintiff shall address WFB's assertion that the Plaintiff's claims are time barred pursuant to N.R.S. §107.080. N.R.S. §107.080 governs non-judicial foreclosure sales of real property pursuant to deeds of trust. However, such statute obviously presupposes that a deed of trust exists. In this case, no valid deed of trust existed at the time of the Bank Foreclosure Sale and such sale was thus void ab initio. Under these circumstances, N.R.S. §107.080 is inapplicable to the facts at hand. Furthermore, N.R.S. §107.080(5) provides that a foreclosure sale **must** be declared void under certain circumstances. Notably, it does not state that a foreclosure sale shall not be set aside **unless** such circumstances are present.

N.R.S. 107.080(5) states as follows:

5. Every sale made under the provisions of this section and other sections of this chapter vests in the purchaser the title of the grantor and any successors in interest without equity or right of redemption. A sale made pursuant to this section must be declared void by any court of competent jurisdiction in the county where the sale took place if:
(a) The trustee or other person authorized to make the sale does not substantially comply with the provisions of this section or any applicable provision of NRS 107.086 and 107.087;
(b) Except as otherwise provided in subsection 6, an action is commenced in the county where the sale took place within 45 days after the date of the sale; and
(c) A notice of lis pendens providing notice of the pendency of the action is

9986 Otterburn

**ROGER P. CROTEAU & ASSOCIATES, LTD.**
• 9120 W. Post Road, Suite 100 • Las Vegas, Nevada 89148 •
Telephone: (702) 254-7775 • Facsimile (702) 228-7719

recorded in the office of the county recorder of the county where the sale took place within 15 days after commencement of the action.

N.R.S. §107.080(5) relates to procedural errors that might occur during the course of a non-judicial foreclosure sale that may be authorized under a deed of trust. However, again, the statute presupposes that a security interest exists and that a sale is <u>authorized</u> – not that a sale is conducted without any authority whatsoever pursuant to void and extinguished deed of trust.

N.R.S. §107.080(4), immediately preceding the section cited by WFB, provides as follows:

> 4. The trustee, **or other person authorized to make the sale under the terms of the trust deed or transfer in trust**, shall, after expiration of the applicable period specified in paragraph (d) of subsection 2 following the recording of the notice of breach and election to sell, and before the making of the sale, give notice of the time and place thereof by recording the notice of sale and by:
> (a) Providing the notice to each trustor, any other person entitled to notice pursuant to this section and, if the property is operated as a facility licensed under chapter 449 of NRS, the State Board of Health, by personal service or by mailing the notice by registered or certified mail to the last known address of the trustor and any other person entitled to such notice pursuant to this section;
> (b) Posting a similar notice particularly describing the property, for 20 days successively, in a public place in the county where the property is situated;
> (c) Publishing a copy of the notice three times, once each week for 3 consecutive weeks, in a newspaper of general circulation in the county where the property is situated or, if the property is a time share, by posting a copy of the notice on an Internet website and publishing a statement in a newspaper in the manner required by subsection 3 of NRS 119A.560; and
> (d) If the property is a residential foreclosure, complying with the provisions of NRS 107.087.

Thus, although it goes without saying, the foreclosure of a deed of trust may only be commenced and carried out where a entity is <u>authorized</u> to make the sale. This can never be the case where a deed of trust has been previously extinguished as a matter of law such as is the case herein.

The Plaintiff is not bound by law to complain of a foreclosure sale that was void ab initio within the time period set forth in N.R.S. §107.080. On the contrary, because the sale was void at the outset, it is as though it never occurred. "One cannot acquire title to the land of another by paying the taxes on it, nor will a claim of title under a void deed, although recorded, ripen into a fee by lapse of time, nor will limitations run against the owner of record in favor of a claimant not in possession, nor is it incumbent upon the owner to sue for cancellation of a void deed, or to take steps to remove a cloud upon his title. . . . If he desires to have the cloud removed the law

9986 Otterburn

affords a remedy, but he is not compelled to go to that expense, and his failure to do so cannot be considered laches, nor will it operate as an estoppel against him. A mere claim of title even of record, unaccompanied by adverse holding, will not start the statute." *Secret Valley Land Co. v. Perry*, 187 Cal. 420, 425-426 (Cal. 1921).

The Plaintiff was the rightful owner of the Property at the time of the Bank Foreclosure Sale, the Plaintiff was the rightful owner of the Property after the Bank Foreclosure Sale, and the Plaintiff remains the rightful owner of the Property to this date.  WFB's unauthorized and void foreclosure proceeding did nothing to change this fact.  The Plaintiff is not complaining of a procedural defect that may have occurred during the course of the bank's foreclosure proceedings.  On the contrary, the Plaintiff is asserting that the Bank Foreclosure Sale was wrongful and void ab initio from the outset.

While the statute of limitations is not an unconscionable defense, it is not such a meritorious defense that either the law or the fact should be strained in aid of it, nor should this court indulge in any presumptions in its favor. *Howard v. Waale-Camplan & Tiberti, Inc.*, 67 Nev. 304, 217 P.2d 872 (1950).  WFB's efforts to impose the 90-day limitation of N.R.S. §107.080(5) to the facts at hand are strained to say the least.  Pursuant to law, the Plaintiff is entitled to bring an action for quiet title within 5 years after the time that it held title and possession.  It did so and the instant Motion is thus without merit.

**3.     THE APPLICABLE PERIOD OF LIMITATIONS TO THIS ACTION IS THE FIVE YEAR STATUTE OF NRS §11.080**

The statute of limitations applicable to this action is five years.  This period of limitations is set forth in NRS 11.080, which provides as follows:

> **Seisin within 5 years; when necessary in action for real property.**  No action for the recovery of real property, or for the recovery of the possession thereof other than mining claims, shall be maintained, unless it appears that the plaintiff or the plaintiff's ancestor, predecessor or grantor was seized or possessed of the premises in question, within 5 years before the commencement thereof.

In this case, there is no dispute that the Plaintiff held title to the Property within the 5 years prior to the filing of this action.  Plaintiff held record title and possession of the Property until at least June 6, 2011, the date on which the Bank Foreclosure Sale took place.  This action was filed on

ROGER P. CROTEAU & ASSOCIATES, LTD.
• 9120 W. Post Road, Suite 100 • Las Vegas, Nevada 89148 •
Telephone: (702) 254-7775 • Facsimile (702) 228-7719

May 18, 2015, well within the 5 year time period in which the Plaintiff has a right to file an action for the recovery of real property.  As a result, the instant action has been timely brought and the instant Motion is without merit.

**4.** **THE BANK FORECLOSURE SALE WAS VOID AND THEREFORE INEFFECTIVE FOR ANY AND ALL PURPOSES**

A void real estate transaction is one where the law deems that no transfer actually occurred.  An example of this is a deed from a party who does not own the real property that is purported to be the subject of the deed.  Such a transfer is ineffective for any and all purposes.  This is exactly the situation at hand where WFB purports to have foreclosed upon and sold the Property based upon an invalid, extinguished deed of trust.

An absolute nullity such as a void deed will not constitute color of title, and the Statute of Limitations will not run in favor of a person under it. *Nesbitt v. De Lamar's Nev. Gold Mining Co.*, 24 Nev. 273 (Nev. 1898)(Citations omitted).  Furthermore, a void deed will not connect a grantee with grantor's possession, nor will it constitute the basis of an action.  *Id.*   There can be no valid correction or confirmation of a void deed.  23 Am. Jur. 2d, Deeds, §287 (1965); 26 C.J.S., Deeds, §31 (1956).  A void deed is invalid in law for any purpose whatsoever, such as a deed to effectuate a prohibited transaction"  23 Am. Jur.2d, Deeds, §137.

A void deed cannot be the foundation of a good title and a bona fide purchaser for value acquires no rights under it.  *Marlenee v. Brown*, 21 Cal. 2d 668, 677 (Cal. 1943).  A void deed cannot pass title even in favor of an innocent purchaser or a bona fide encumbrancer for value.  *First Interstate Bank v. First Wyoming Bank*, 762 P.2d 379, 382 (Wyo. 1988).   It is clearly well established law that a void deed grants no rights to the grantee.  As a result, the Plaintiff remains the title owner of the Property.

**5.** **WFB LACKS STANDING TO COMPLAIN ON BEHALF OF THE UNITED STATES OR HUD**

WFB seems to seek to stand in the shoes of HUD or the United States government, asserting that its void Bank Foreclosure Sale should be excused because HUD held a "mortgage interest" in the Property."   However, by WFB's own admission, the Property was deeded by

ROGER P. CROTEAU & ASSOCIATES, LTD.
• 9120 W. Post Road, Suite 100  • Las Vegas, Nevada 89148  •
Telephone: (702) 254-7775 • Facsimile (702) 228-7719

9986 Otterburn

WFB to HUD on October 3, 2011, almost one year **after** the HOA Foreclosure Sale had taken place. Motion, p. 6, ll. 12-13. Thus, HUD possessed no interest in the Property on the date of the HOA Foreclosure Sale.

Assuming that this Court were to accept as true WFB's claims that the United States or HUD possessed some sort of ownership interest in the First Deed of Trust at the time of the HOA Foreclosure Sale by virtue of the fact that it insured the payment of the loan by the Former Owners, WFB lacks standing to raise these issues on behalf of said parties. WFB is not seeking to protect its own property or interests, but those of the federal government. WFB is not entitled to any of the protections afforded the federal government. Only the person whose interest is at stake has such standing. HUD is the best proponent of its interests and it would be imprudent for the court to recognize another party's standing to pursue Property Clause claims in this case. *Freedom Mortg. Corp. v. Las Vegas Dev. Grp., LLC*, 2015 U.S. Dist. LEXIS 66249, 1-2 (D. Nev. May 19, 2015). Indeed, HUD is a defendant that has appeared in this action and it has not sought to raise the challenge that WFB brings.

The Secretary of HUD is the only person who may sue or be sued on behalf of HUD, unless the Secretary expressly authorizes another entity or person to act on its behalf. 12 U.S.C. § 1702. Pursuant to 12 U.S.C. §1702, "[t]he **Secretary** [of HUD] **shall**, in carrying out the provisions of this subchapter and subchapters II, III, V, VI, VII, VIII, IX-B, and X, **be authorized, in his official capacity, to sue and be sued** in any court of competent jurisdiction, State or Federal." (emphasis added). In other words, WFB may not bring claims on behalf of HUD without express authority from the Secretary.

Although it readily apparent that WFB was the holder of the First Deed of Trust at the time of the HOA Foreclosure Sale, WFB really asserts that HUD and/or the United States will suffer harm if its void Bank Foreclosure Sale is not allowed to stand. WFB lacks standing to assert these claims. However, as discussed in detail below, it is important to note that neither HUD nor the United States will suffer any harm if N.R.S. Chapter 116 is allowed to function in the manner in which it is and was intended and the manner in which the Nevada Supreme Court has recently confirmed that it should function.

9986 Otterburn

ROGER P. CROTEAU & ASSOCIATES, LTD.
• 9120 W. Post Road, Suite 100 • Las Vegas, Nevada 89148 •
Telephone: (702) 254-7775 • Facsimile (702) 228-7719

WFB never assigned the First Deed of Trust to HUD prior to the HOA Foreclosure Sale. Nor did WFB acquire or transfer any other interest in the Property to HUD until well after the HOA Foreclosure Sale. Because neither the United States nor HUD possessed any interest whatsoever in either the First Deed of Trust or the Property at the time of the HOA Foreclosure Sale, the Property Clause was not implicated in any manner by the HOA Foreclosure Sale.

Although WFB asserts that HUD held a "mortgage interest" in the Property, this is nothing more than a red herring. HUD held no more interest in the Property than an automobile insurer holds in a consumer's automobile. Had WFB not negligently forfeited its security interest, or had WFB actually conveyed an interest in the First Deed of Trust or the Property to HUD prior to the HOA Foreclosure Sale, its arguments might have merit. Unfortunately, it did forfeit its security interest and it did not assign any interest in either the Property of the First Deed of Trust to HUD until long after the First Deed of Trust was extinguished. As a result, WFB breached its contractual obligations to HUD and HUD is entitled to recover any and all sums of money that it may have expended from WFB.

**6.** **THE PROPERTY CLAUSE IS INAPPLICABLE WHERE NO INTEREST IN THE PROPERTY OR THE FIRST DEED OF TRUST WAS TRANSFERRED TO HUD PRIOR TO THE HOA FORECLOSURE SALE**

The Property Clause of the United States Constitution applies only to property belonging to the United States. U.S. Const. Art. IV, §3, cl. 2. In this case, HUD possessed no interest in the Property until WFB purported to transfer the Property to it on October 3, 2011 – almost one year after the HOA Foreclosure Sale extinguished the First Deed of Trust. As explained below, HUD was under no obligation to pay any insurance payments due to WFB's breach of its various obligations to HUD. Furthermore, HUD is entitled to recover any funds that it may have expended as a result of WFB's breach from WFB.

24 CFR 203.359 provides the time line under which a mortgagee is required to transfer real property to HUD, stating in pertinent part as follows:

> (b) *For mortgages insured under firm commitments issued on or after November 19, 1992, or under direct endorsement processing where the credit worksheet was signed by the mortgagee's underwriter on or after November 19, 1992—(1)*

9986 Otterburn

ROGER P. CROTEAU & ASSOCIATES, LTD.
• 9120 W. Post Road, Suite 100 • Las Vegas, Nevada 89148 •
Telephone: (702) 254-7775 • Facsimile (702) 228-7719

*Conveyance by the mortgagee.* The mortgagee must acquire good marketable title and transfer the property to the Secretary within 30 days of the later of:
(i) Filing for record the foreclosure deed;
(ii) Recording date of deed in lieu of foreclosure;
(iii) Acquiring possession of the property;
(iv) Expiration of the redemption period; or
(v) Such further time as the Secretary may approve in writing.

Obviously, 24 CFR 203.359 specifically provides that property shall be transferred to HUD only **AFTER** the mortgagee acquires **good marketable title**. In this case, WFB never acquired good marketable title and never transferred good marketable title to HUD. Nor will it ever be able to do so. WFB is unable to obtain good marketable title due to its own errors.

24 CFR 203.361 provides as follows:

**Upon receipt of notice of property transfer** the Commissioner shall accept title to and possession of the property as of the date of the filing for record of the deed to the Commissioner, subject to compliance with the regulations in this part. (Emphasis added).

After the void Bank Foreclosure Sale, WFB purported to transfer the Property to HUD. However, this transfer was and is void because WFB possessed no valid title to give. WFB was unable to transfer good marketable title to HUD and HUD was thereafter unable to transfer good marketable title to Crystalia and Shirley Yfantis. The Plaintiff remains the owner of the Property.

**7.**   **NEITHER HUD NOR THE UNITED STATES WILL SUFFER ANY LOSS AS A RESULT OF WFB'S NEGLIGENCE**

Although it provides extraordinarily little evidence that this is the case, WFB asserts that the First Deed of Trust was insured by HUD through the FHA. Motion, p. 10-11. WFB thus asserts that HUD held a "mortgage interest" in the Property and that the Property was federal property protected by the United States Constitution. *Id.* However, WFB ignores a very simple fact: because WFB failed to comply with its obligations to HUD, HUD is entitled to recover any losses that it may suffer from WFB.

Here, it is unclear at this time whether HUD expended any funds in the form of mortgage insurance as a result of the Bank Foreclosure Sale. Assumably, WFB made a claim for insurance proceeds at the time that it purported to transfer the Property to HUD. However 12 U.S.C. 1710 governs the payment of mortgage insurance, providing in pertinent part as follows:

ROGER P. CROTEAU & ASSOCIATES, LTD.
• 9120 W. Post Road, Suite 100 • Las Vegas, Nevada 89148 •
Telephone: (702) 254-7775 • Facsimile (702) 228-7719

9986 Otterburn

**(1) Authorized claims procedures**

The Secretary may, in accordance with this subsection and terms and conditions prescribed by the Secretary, pay insurance benefits to a mortgagee for any mortgage insured under section 1709 of this title through any of the following methods:

**(A) Assignment of mortgage**

The Secretary may pay insurance benefits whenever a mortgage has been in a monetary default for not less than 3 full monthly installments or whenever the mortgagee is entitled to foreclosure for a nonmonetary default. Insurance benefits shall be paid pursuant to this subparagraph only upon the assignment, transfer, and delivery to the Secretary of—

(i) all rights and interests arising under the mortgage;

(ii) all claims of the mortgagee against the mortgagor or others arising out of the mortgage transaction;

(iii) title evidence satisfactory to the Secretary; and

(iv) such records relating to the mortgage transaction as the Secretary may require.

**(B) Conveyance of title to property**

The Secretary may pay insurance benefits if the mortgagee has acquired title to the mortgaged property through foreclosure or has otherwise acquired such property from the mortgagor after a default upon—

(i) the prompt conveyance to the Secretary of title to the property which meets the standards of the Secretary in force at the time the mortgage was insured and which is evidenced in the manner provided by such standards; and

(ii) the assignment to the Secretary of all claims of the mortgagee against the mortgagor or others, arising out of mortgage transaction or foreclosure proceedings, except such claims as may have been released with the consent of the Secretary.

The Secretary may permit the mortgagee to tender to the Secretary a satisfactory conveyance of title and transfer of possession directly from the mortgagor or other appropriate grantor, and may pay to the mortgagee the insurance benefits to which it would otherwise be entitled if such conveyance had been made to the mortgagee and from the mortgagee to the Secretary.

**(C) Claim without conveyance of title**

The Secretary may pay insurance benefits upon sale of the mortgaged property at foreclosure where such sale is for at least the fair market value of the property (with appropriate adjustments), as determined by the Secretary, and upon assignment to the Secretary of all claims referred to in clause (ii) of subparagraph (B).

**(D) Preforeclosure sale**

The Secretary may pay insurance benefits upon the sale of the mortgaged property by the mortgagor after default and the assignment to the Secretary of all claims referred to in clause (ii) of subparagraph (B), if—

(i) the sale of the mortgaged property has been approved by the Secretary;

(ii) the mortgagee receives an amount at least equal to the fair market value of the property (with appropriate adjustments), as determined by the Secretary; and

(iii) the mortgagor has received an appropriate disclosure, as determined by the Secretary.

Thus, a secured lender is entitled to the payment of insurance benefits from HUD in the event of default by the borrower only after "assignment, transfer and delivery" of all rights and interests arising under the mortgage and title evidence satisfactory to the Secretary.  In the alternative, the lender may convey title to the Property if it has obtained the same.   This is exactly what is

9986 Otterburn

ROGER P. CROTEAU & ASSOCIATES, LTD.
• 9120 W. Post Road, Suite 100 • Las Vegas, Nevada 89148 •
Telephone: (702) 254-7775 • Facsimile (702) 228-7719

purported to have occurred in this case, albeit almost one year after the HOA Foreclosure Sale.

The rules and regulations prescribed by the Secretary are set forth in 24 CFR 200 *et seq*.

24 CFR 203.363(b) provides as follows:

> (b) *For mortgages insured under firm commitments issued on or after November 19, 1992, or under direct endorsement processing where the credit worksheet was signed by the mortgagee's underwriter on or after November 19, 1992.* If, for any reason, the mortgagee fails to comply with the regulations in this subpart, the Secretary may hold processing of the application for insurance benefits in abeyance for a reasonable time in order to permit the mortgagee to comply. In the alternative to holding processing in abeyance, the Secretary may reconvey title to the property to the mortgagee, in which event the application for insurance benefits shall be considered as cancelled and the mortgagee shall refund the insurance benefits to the Secretary as well as other funds required by § 203.364 of this part. The mortgagee may reapply for insurance benefits at a subsequent date; provided, however, that the mortgagee may not be reimbursed for any expenses incurred in connection with the property after it has been reconveyed by the Secretary, or paid any debenture interest accrued after the date of initial conveyance or after the date conveyance was required by § 203.359 of this part, whichever is earlier, and there will be deducted from the insurance benefits any reduction in the Secretary's estimate of the value of the property occurring from the time of reconveyance to the time of reapplication.

Thus, in the event that WFB made a claim for insurance proceeds from HUD, and HUD paid such a claim, HUD is entitled to recover these insurance benefits.  One of the obligations placed upon WFB and other lending institutions by HUD is to provide good and marketable title to HUD.

24 CFR 203.366 provides as follows:

> (a) *Satisfactory conveyance of title and transfer of possession.* The mortgagee shall tender to the Commissioner a satisfactory conveyance of title and transfer of possession of the property. The deed or other instrument of conveyance shall convey good marketable title to the property, which shall be accompanied by title evidence satisfactory to the Commissioner.
> (b) *Conveyance of property without good marketable title.* (1) For mortgages insured under firm commitments issued on or after November 19, 1992, or under direct endorsement processing where the credit worksheet was signed by the mortgagee's underwriter on or after November 19, 1992, if the title to the property conveyed by the mortgagee to the Secretary is not good and marketable, the mortgagee must correct any title defect within 60 days after receiving notice from the Secretary, or in such further time as the Secretary may approve in writing. (2) If the defect is not corrected within 60 days, or such further time as the Secretary approves in writing, the mortgagee must reimburse the Secretary for HUD's costs of holding the property, accruing on a daily basis, and interest on the amount of insurance benefits paid to the mortgagee at an interest rate set in conformity with the Treasury Fiscal Requirements Manual from the date of such notice to the date the defect is corrected or until the Secretary reconveys the property to the mortgagee, as described in paragraph (b)(3) of this section. The daily holding costs to be charged a mortgagee shall include the costs specified in §

ROGER P. CROTEAU & ASSOCIATES, LTD.
• 9120 W. Post Road, Suite 100 • Las Vegas, Nevada 89148 •
Telephone: (702) 254-7775 • Facsimile (702) 228-7719

9986 Otterburn

ROGER P. CROTEAU & ASSOCIATES, LTD.
• 9120 W. Post Road, Suite 100 • Las Vegas, Nevada 89148 •
Telephone: (702) 254-7775 • Facsimile (702) 228-7719

203.364 of this part. (3) If the title defect is not corrected within a reasonable time, as determined by HUD, the Secretary will, after notice, reconvey the property to the mortgagee and the mortgagee must reimburse the Secretary in accordance with §§ 203.363 and 203.364 of this part.

In this case, WFB never obtained nor conveyed good and marketable title to HUD because it negligently allowed its security interest to be extinguished by operation of law. However, HUD will suffer no harm whatsoever as a result of WFB's negligence because HUD is entitled to the reimbursement of all its expenses. HUD is also entitled to reconvey any purported interest it may have in the Property to WFB. Thus, the entire transaction can be unwound by HUD.

Clearly, 24 CFR 203.363(b) and 24 CFR 203.366 contemplate that situations can and will arise in which a mortgagee is unable to convey good and marketable title and insurance benefits shall not be paid to said mortgagee. This is also confirmed by 12 U.S.C. §1708(c)(3)(E), which provides as follows:

> The Board may at any time enter into a settlement agreement with a mortgagee to resolve any outstanding grounds for an action. Agreements may include provisions such as—
> (i) cessation of any violation;
> (ii) correction or mitigation of the effects of any violation;
> (iii) repayment of any sums of money wrongfully or incorrectly paid to the mortgagee by a mortgagor, by a seller or by the Federal Housing Administration;
> (iv) actions to collect sums of money wrongfully or incorrectly paid by the mortgagee to a third party;
> (v) indemnification of the Federal Housing Administration for mortgage insurance claims on mortgages originated in violation of Federal Housing Administration requirements;
> (vi) modification of the length of the penalty imposed; or
> (vii) implementation of other corrective measures acceptable to the Secretary.

WFB's failure to protect its security interest in the context of the HOA Foreclosure Sale in this case was exactly the type of situation that excuses HUD from performance under its insurance contract. Because WFB failed to pay the super-priority portion of the HOA lien prior to the HOA Foreclosure Sale, the First Deed of Trust and all other security interests recorded against the Property were extinguished pursuant to *SFR Investments*. WFB was thereafter no longer entitled to foreclose upon the Property because it possessed no valid security interest. Subsequent to the void Bank Foreclosure Sale, WFB's purported transfer of the Property to HUD was wholly ineffective. HUD never received good and valid title to the Property and both HUD

9986 Otterburn

1  and the Yfantis parties are entitled to collect damages from WFB's related to its fraudulent sale.

2  **8.    THE APPLICATION OF FEDERAL LAW TO THE FACTS AT HAND DOES**

3  **NOT DICTATE THAT THE FIRST DEED OF TRUST WAS NOT**

4  **EXTINGUISHED**

5  WFB represents to this Court that "[t]he District of Nevada has recently determined that

6  the Supremacy Clause prohibits extinguishment of Wells Fargo's federally insured deed of trust."

7  Motion, p. 11, ll. 5-6.  To say that this is an overstatement would be an understatement.  While

8  non-binding opinions have been entered which could be interpreted in such a manner, opposing

9  opinions also exist which WFB would prefer that this Court not be apprised of.  In fact, the

10  majority of the relevant case law is highly distinguishable because in almost every case

11  addressing the issue, HUD actually either owned a deed of trust via assignment or actually owned

12  the real property at issue at the time of the taking complained of.  This was not the case herein,

13  where WFB admits that HUD possessed no ownership interest until approximately 1 year after

14  the HOA Foreclosure Sale had taken place and therefore after the First Deed of Trust had already

15  been extinguished as a matter of law.

16  WFB fails to make mention of this Court's recent decision in the matter of *Freedom*

17  *Mortg. Corp. v. Las Vegas Dev. Grp., LLC*, 2015 U.S. Dist. LEXIS 66249, 1-2 (D. Nev. May 19,

18  2015), wherein Judge Jennifer Dorsey pointed out as follows:

19    The Ninth Circuit has not held that a HUD insurance policy on a bank loan gives
20    the federal government a property interest protected by the Property Clause. It has
      held that a deed of trust securing a purchase-price mortgage is a protected interest.
      And lower courts in this circuit have held that an HOA's foreclosure on property
21    owned by a federal agency violates the Property and Supremacy Clauses.  The key
      to a successful Property Clause challenge is that the federal government either
22    held a deed of trust against, or owned, the property.

23  In an extraordinarily detailed and well-reasoned opinion, Judge Dorsey went on to find that

24  neither the Property Clause nor the Supremacy Clause of the United States Constitution

25  precludes enforcing NRS 116.3116 against a property with a HUD-insured mortgage.

26  WFB's desperate arguments attempting to place a loss upon HUD where none exists are

27  in fact simply intended to protect itself.  Under the facts at hand, no interest of **HUD** was

28  extinguished by the HOA Foreclosure Sale.  Only the security interest of WFB was extinguished.

ROGER P. CROTEAU & ASSOCIATES, LTD.
• 9120 W. Post Road, Suite 100 • Las Vegas, Nevada 89148 •
Telephone: (702) 254-7775 • Facsimile (702) 228-7719

9986 Otterburn

**ROGER P. CROTEAU & ASSOCIATES, LTD.**
• 9120 W. Post Road, Suite 100 • Las Vegas, Nevada 89148 •
Telephone: (702) 254-7775 • Facsimile (702) 228-7719

The extinguishment of the security interest in the form of the First Deed of Trust had no effect whatsoever upon HUD other than nullifying HUD's obligations to tender any form of insurance payments to WFB. HUD otherwise remained in exactly the same position in which it existed prior to the HOA Foreclosure Sale. Likewise, the fact that WFB eventually transferred ineffective and void title to HUD caused HUD no harm.

To the extend that HUD paid any insurance payments to WFB, HUD is entitled to recoup these payments from WFB. Likewise, HUD is entitled to recover any other damages suffered as a result of WFB's reckless transfer of a void title. Allowing Nevada law to operate in the manner in which the Nevada Supreme Court has directed will have no effect on HUD's willingness to participate in the mortgage market. What it will do is provide lenders such as WFB an additional incentive to manage their affairs appropriately and to avoid the careless of loss of their assets.

Accepting WFB's arguments would tacitly sanction the careless practices of lenders such as WFB by removing any incentive for them to follow Nevada law. Indeed, lenders such as WFB would be enabled to continue to ignore the laws that are intended to protect HOA's and their members, with the ability to simply obtain a handout from the United States government rather than suffer the losses that they bring about through their own inaction and misfeasance. This would shift the losses and risks of losses from the lenders who were are and are responsible for them to the homeowners who are members of HOAs throughout the State of Nevada. This was never the intent of either the Nevada Legislature or the United States Congress.

**9. N.R.S. CHAPTER 116 EXPRESSLY REQUIRES NOTICE TO INTERESTED PARTIES AND SPECIFICALLY TO LIEN HOLDERS**

The balance of the instant Motion is primarily based upon a flawed claim that N.R.S. Chapter 116 does not require actual notice to lenders. As a result, the Movant asserts that the statute violates its Due Process rights. This is simply not the case. In fact, N.R.S. Chapter 116 specifically requires the noticing of interested parties such as WFB. WFB simply does not comprehend the law.

WFB correctly points out that N.R.S. §116.31162, which governs the notice of delinquent

9986 Otterburn

assessment, does not require notice to a secured lender.  However, the notice of delinquent

assessment does not threaten any immediate foreclosure and simply provides notice to the

homeowner of the delinquent assessment.  If the homeowner does not cure the delinquent

assessment, the HOA foreclosure process moves to the next stages, all of which specifically

require notice to a secured lender.

N.R.S. §116.31168 provides that "[t]he provisions of NRS 107.090 apply to the

foreclosure of an association's lien as if a deed of trust were being foreclosed."  When the

provisions of N.R.S. Chapter 116 are read with this in mind, it is readily apparent that the statute

is no less constitutional than those that govern the foreclosure of deeds of trust.   Indeed, WFB's

arguments, if accepted, would likely invalidate N.R.S. Chapter 107.

N.R.S. §116.31163 provides as follows:

**NRS 116.31163  Foreclosure of liens: Mailing of notice of default and election to sell to certain interested persons.**  The association or other person conducting the sale shall also mail, within 10 days after the notice of default and election to sell is recorded, a copy of the notice by first-class mail to:
1.  Each person who has requested notice pursuant to NRS 107.090 or 116.31168;
2.  **Any holder of a recorded security interest encumbering the unit's owner's interest who has notified the association, 30 days before the recordation of the notice of default, of the existence of the security interest; and**
3.  A purchaser of the unit, if the unit's owner has notified the association, 30 days before the recordation of the notice, that the unit is the subject of a contract of sale and the association has been requested to furnish the certificate required by NRS 116.4109.

Thus, N.R.S. §116.31163 incorporates the provisions of NRS §107.090 into the HOA Lien

Statute.   NRS §107.090(3) specifically requires the foreclosing trustee to send foreclosure

notices to junior lienholders, stating as follows:

1.  As used in this section, "person with an interest" means any person who has or claims any right, title or interest in, or lien or charge upon, the real property described in the deed of trust, as evidenced by any document or instrument recorded in the office of the county recorder of the county in which any part of the real property is situated.
. . .

3.  **The trustee or person authorized to record the notice of default shall, within 10 days after the notice of default is recorded and mailed pursuant to NRS 107.080, cause to be deposited in the United States mail an envelope, registered or certified, return receipt requested and with postage prepaid, containing a copy of the notice, addressed to:**
(a) Each person who has recorded a request for a copy of the notice; and
**(b) Each other person with an interest whose interest or claimed interest is**

9986 Otterburn

ROGER P. CROTEAU & ASSOCIATES, LTD.
• 9120 W. Post Road, Suite 100 • Las Vegas, Nevada 89148 •
Telephone: (702) 254-7775 • Facsimile (702) 228-7719

**subordinate to the deed of trust.**
4.  The trustee or person authorized to make the sale shall, at least 20 days before the date of sale, cause to be deposited in the United States mail an envelope, registered or certified, return receipt requested and with postage prepaid, containing a copy of the notice of time and place of sale, addressed to each person described in subsection 3.

Because the statute expressly incorporates N.R.S. §107.090 and provides that it is applicable as though a trust deed were being foreclosed, N.R.S. Chapter 116 is no less constitutional than N.R.S. Chapter 107.  If this were not enough, N.R.S. §116.31163 also specifically requires the noticing of "any holder of a recorded security interest encumbering the unit's owner's interest who has notified the association, 30 days before the recordation of the notice of default, of the existence of the security interest."

Likewise, N.R.S. §116.311635 also requires the noticing of the notice of sale to secured parties.  N.R.S. §116.311635 provides in pertinent part as follows:

1.  The association or other person conducting the sale shall also, after the expiration of the 90 days and before selling the unit:
(a) Give notice of the time and place of the sale in the manner and for a time not less than that required by law for the sale of real property upon execution, except that in lieu of following the procedure for service on a judgment debtor pursuant to NRS 21.130, service must be made on the unit's owner as follows:
(1) A copy of the notice of sale must be mailed, on or before the date of first publication or posting, by certified or registered mail, return receipt requested, to the unit's owner or his or her successor in interest at his or her address, if known, and to the address of the unit; and
(2) A copy of the notice of sale must be served, on or before the date of first publication or posting, in the manner set forth in subsection 2; and
(b) **Mail, on or before the date of first publication or posting, a copy of the notice by certified or registered mail, return receipt requested, to:**
**(1) Each person entitled to receive a copy of the notice of default and election to sell notice under NRS 116.31163;**
**(2) The holder of a recorded security interest or the purchaser of the unit, if either of them has notified the association, before the mailing of the notice of sale, of the existence of the security interest, lease or contract of sale, as applicable;** and
(3) The Ombudsman. (Emphasis added).

Thus, N.R.S. §116.311635 specifically requires that the notice of sale be mailed not only to each person required to receive a copy of the notice of default and election to sell, but also to each "holder of a recorded security interest or the purchaser of the unit, if either of them has notified the association, before the mailing of the notice of sale, of the existence of the security interest."

Because N.R.S. 116.311635 refers to N.R.S. 116.31163, it also incorporates by reference NRS

9986 Otterburn

**ROGER P. CROTEAU & ASSOCIATES, LTD.**
• 9120 W. Post Road, Suite 100 • Las Vegas, Nevada 89148 •
Telephone: (702) 254-7775 • Facsimile (702) 228-7719

§107.090(3), which specifically requires the foreclosing trustee to send foreclosure notices to junior lienholders.

WFB seems to believe that it is required to "opt-in" to N.R.S. Chapter 116 by recording some sort of formal request for notice in order to be entitled to receive notice of HOA foreclosure proceedings pursuant to the foregoing statutes.  This is simply not the case.  On the contrary, the statute simply confirms that any party who has requested notice shall also receive notice.

N.R.S. §111.300 *et seq*. governs the recording of documents.  N.R.S.§111.315 provides as follows:

> **Recording of conveyances and instruments: Notice to third persons.**  Every conveyance of real property, and every instrument of writing setting forth an agreement to convey any real property, or whereby any real property may be affected, proved, acknowledged and certified in the manner prescribed in this chapter, to operate as notice to third persons, ***shall be recorded*** in the office of the recorder of the county in which the real property is situated or to the extent permitted by NRS 105.010 to 105.080, inclusive, in the Office of the Secretary of State, but shall be valid and binding between the parties thereto without such record. (Emphasis added).

N.R.S. §111.320 provides as follows:

> **Filing of conveyances or other instruments is notice to all persons: Effect on subsequent purchasers and mortgagees.**  Every such conveyance or instrument of writing, acknowledged or proved and certified, and recorded in the manner prescribed in this chapter or in NRS 105.010 to 105.080, inclusive, must *from the time of filing the same with the Secretary of State or recorder for record, impart notice to all persons of the contents thereof;* and subsequent purchasers and mortgagees shall be deemed to purchase and take with notice. (Emphasis added).

Pursuant to N.R.S.§111.315, instruments that affect real property shall be recorded in the office of the County Recorder of the county in which the property is situated.   Pursuant to N.R.S. §111.320, upon the recording of a document, all persons are imparted with notice of the contents thereof.  As a result, upon the recording of a deed of trust, the holder of that deed of trust has notified the association, as well as all other persons, of its security interest.  The recording of the deed of trust alone is thus sufficient to impart notice to the HOA pursuant to N.R.S. §116.31163 and N.R.S. §116.311635, as well as N.R.S. §107.090.  As a result, when read together Nevada law clearly requires that the holders of secured interests are obligated to receive notice by the statute.

WFB argues that "subsection 3(b) of N.R.S. §107.090 upon which plaintiffs often rely,

9986 Otterburn

**ROGER P. CROTEAU & ASSOCIATES, LTD.**
• 9120 W. Post Road, Suite 100 • Las Vegas, Nevada 89148 •
Telephone: (702) 254-7775 • Facsimile (702) 228-7719

ROGER P. CROTEAU & ASSOCIATES, LTD.
• 9120 W. Post Road, Suite 100 • Las Vegas, Nevada 89148 •
Telephone: (702) 254-7775 • Facsimile (702) 228-7719

cannot apply to lenders for purposes of notice because their interest in not 'subordinate to the deed of trust' – their interest is the deed of trust." Motion, p. 23, ll. 16-18. WFB fails to understand that N.R.S. §116.31168 provides that "[t]he provisions of NRS 107.090 apply to the foreclosure of an association's lien **as if a deed of trust were being foreclosed**." Thus, for purposes this analysis, the words "subordinate to the deed of trust" contained in N.R.S. §107.090 actually refer to interests that are subordinate to the HOA Lien, not interests that are subordinate to the First Deed of Trust. As was made clear by the Nevada Supreme Court in the matter of *SFR Investments*, and contrary to the prior incorrect interpretations of WFB and other deed of trust holders, the First Deed of Trust is subordinate to the HOA Lien. As a result, N.R.S. §107.090, as incorporated by N.R.S. §116.31168 expressly require notice to the First Deed of Trust holder.

WFB would have this court believe that the notice requirements of N.R.S. Chapter 116 are "opt-in" requirements and that it is required to take some affirmative action in order to "request" notice. This is true only in the broadest possible sense in that it is required to record its security interest as it is already required to do by law pursuant to N.R.S.§111.315. Upon the recording of the security interest, the entire world, including the HOA, is imparted with notice of its interest. Thus, the holder of the security interest is statutorily required to receive notice by N.R.S. Chapter 116. WFB's argument to the contrary indicates that it possesses a fundamentally flawed understanding of even the most basic principles of the recording statutes and real property law.

**10.   THE NEVADA SUPREME COURT HAS ALREADY CONFIRMED THAT THE NOTICE REQUIREMENTS OF THE STATUTE ARE PROPER**

The first issue presented in *SFR Investments* was "[w]hether a non-judicial homeowners association's foreclosure of a lien containing super-priority amounts implicates and violates due process where the foreclosing party is a private actor and NRS 116.31168 incorporates NRS 107.090, which requires foreclosure notices to be mailed to all subordinate claim holders, including first security interest holders like the Bank." Appellant's Opening Brief, Doc. #13-30030, p. XIII, *SFR Investments Pool I, LLC v. U.S. Bank, N.A.*, 130 Nev. ___, 334 P.3d 408,

9986 Otterburn

ROGER P. CROTEAU & ASSOCIATES, LTD.

•9120 West Post Road, Suite 100 • Las Vegas, Nevada 89148 •
Telephone: (702) 254-7775 • Facsimile (702) 228-7719

2014 WL 4656471 (Adv. Op. No. 75, Sept. 18, 2014).  In the Opening Brief, the Appellant argued at length that constitutional due process is not offended by N.R.S. Chapter 116.  The Respondent's Response Brief and the Appellant's Reply Brief likewise argued the issue, as did the parties at oral argument.

Based upon the issue before it, the Nevada Supreme Court resolved the arguments set forth in this Motion in the matter of *SFR Investments*, stating that "the Nevada Legislature has written NRS Chapter 116 to allow nonjudicial foreclosure of HOA liens, **subject to the special notice requirements and protections handcrafted by the Legislature in NRS 116.31162 through NRS 116.31168**."  *SFR Invs. Pool 1, LLC*, 334 P.3d 408 at 417.  (Emphasis added).  The Nevada Supreme Court took the time to specifically summarize these notice requirements as follows:

> To initiate foreclosure under NRS 116.31162 through NRS 116.31168, a Nevada HOA must notify the owner of the delinquent assessments. NRS 116.31162(1) (a). if the owner does not pay within 30 days, the HOA may record a notice of default and election to sell. NRS 116.31162(1)(b). Where the UCIOA states general third-party notice requirements, see 1982 UCIOA § 3-116(j)(4) ("In the case of foreclosure under [insert reference to state power of sale statute], the association shall give reasonable notice of its action to all lien holders of the unit whose interest would be affected."), **NRS 116.31168 imposes specific timing and notice requirements.**

> "The provisions of NRS 107.090," governing notice to junior lienholders and others in deed-of-trust foreclosure sales, "apply to the foreclosure of an association's lien as if a deed of trust were being foreclosed." NRS 116.31168(1). The HOA must provide the homeowner notice of default and election to sell; it also must notify "[e]ach person who has requested notice pursuant to NRS 107.090 or 116.31168" and "[a]ny holder of a recorded security interest encumbering the unit's owner's interest who has notified the association, 30 days before the recordation of the notice of default, of the existence of the security interest." NRS 116.31163(1), (2). The homeowner must be given at least 90 days to pay off the lien. NRS 116.31162, if the lien is not paid off, then the HOA may proceed to foreclosure sale. Id. Before doing so, the HOA must give notice of the sale to the owner and to the holder of a recorded security interest if the security interest holder "has notified the association, before the mailing of the notice of sale of the existence of the security interest." NRS 116.311635(1)(b)(2); see NRS 107.090(3)(b), (4) (requiring notice of default and notice of sale to "[e]ach other person with an interest whose interest or claimed interest is subordinate to the deed of trust").

> NRS 116.31164 addresses the procedure for sale upon foreclosure of an HOA lien and specifies the distribution order for the proceeds of sale. A trustee's deed reciting compliance with the notice provisions of NRS 116.31162 through NRS 116.31168 "is conclusive as to the recitals "against the unit's former owner, his or her heirs and assigns, and all other persons." NRS 116.31166(2). And, "[t]he sale

9986 Otterburn

ROGER P. CROTEAU & ASSOCIATES, LTD.

• 9120 W. Post Road, Suite 100 • Las Vegas, Nevada 89148 •
Telephone: (702) 254-7775 • Facsimile (702) 228-7719

of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the un it's owner without equity or right of redemption." NRS 116.31166(3).

*SFR Invs. Pool 1, LLC*, 334 P.3d 408, 411-412 (Nev. 2014)(Emphasis added).

The Nevada Supreme Court held that "[i]t is well established that 'due process is not offended by requiring a person with actual, timely knowledge of an event that may affect a right to exercise due diligence and take necessary steps to preserve that right.'" *Id*. at 418 (Citing *In re Medaglia*, 52 F.3d 451, 455 (2d Cir. 1995)). The Nevada Supreme Court further disposed of US Bank's complaints regarding the content of the notices it received, noting that specific lien amounts were set forth in the notices. *SFR Invs. Pool 1, LLC*, 334 P.3d at 418. Ultimately, in reversing the District Court's dismissal, the Nevada Supreme Court stated "we credit the allegations of the complaint that SFR provided all **statutorily required notices** as true and sufficient to withstand a motion to dismiss." *Id*. (Emphasis added). Thus, the Nevada Supreme Court specifically noted that the notices were "statutorily required." Although WFB apparently did not bother to read it, the Nevada Supreme Court has already reviewed and confirmed the notice requirements of N.R.S. Chapter 116, going so far as to specifically state that "NRS 116.31168 imposes specific timing and notice requirements."

**11.    IN DENYING A REHEARING OF ITS DECISION IN THE MATTER OF SFR INVESTMENTS, THE NEVADA SUPREME COURT CLEARLY CONSIDERED AND REJECTED A FACIAL CHALLENGE OF THE STATUTE**

To the extent that the opinion entered in the matter of *SFR Investments* is deemed to have not addressed the constitutionality of the statute, the Nevada Supreme Court considered and rejected a facial challenge when it decided to deny a rehearing of the case. Five amicus curiae briefs were accepted and considered in support of U.S. Bank's petition for rehearing. In the brief filed on behalf of the United Trustees Association and American Legal & Financial Network, the amici argued that "the Majority's analysis runs afoul of due process protections because the statutes do not absolutely require the HOA in a non-judicial foreclosure to send notice of the lien or sale to the first mortgagee" and "when the first mortgagee is not required to get notices of delinquency, default and sale. . ." Amicus Brief in Support of the Respondent U.S. Bank, N.A.

9986 Otterburn

as Trustee for the Certificate Holders of the Banc of America Mortgage Pass-Through Certificates, Series 2008-A, Petition for Rehearing Seeking Affirmance, Amicus Curiae, United Trustees Association and American Legal & Financial Network, at pp. 3-4 and 5.  In denying a rehearing, the Nevada Supreme Court clearly stated that "[w]e have considered the briefs of amici curiae in resolving the petition for rehearing."  SFR Investments Pool 1, LLC v. U.S. Bank, No. 63078, Order Denying Rehearing, at 2, n. 1 (Nev. Oct. 16, 2014).  It is thus readily apparent that the Nevada Supreme Court considered and disposed of the arguments set forth herein.

**12.** **BECAUSE THE NEVADA SUPREME COURT FOUND THAT NRS 116.3116 DID NOT VIOLATE DUE PROCESS ON AN AS-APPLIED BASIS IN THE MATTER OF SFR INVESTMENTS, THE STATUTE IS NECESSARILY FACIALLY CONSTITUTIONAL**

When making a facial challenge to a statute, the challenger bears the burden of demonstrating that there is no set of circumstances under which the statute would be valid.  *Deja Vu Showgirls of Las Vegas, LLC v. Nev. Dep't of Taxation*, 334 P.3d 392 (Nev. 2014).   In the matter of *SFR Investments*, the Nevada Supreme Court analyzed the notice requirements of N.R.S. 116.3116 *et seq*. at length and specifically found that due process was not violated. Under these circumstances, it is patently clear that the statute cannot be facially unconstitutional.

In support of its Motion, WFB cites with approval an unpublished Order granting summary judgment entered by the Eighth Judicial District Court of the State of Nevada in the matter of *Cano-Martinez v. HSBC Bank USA, et al.*, Case No. A-13-692027-C, Dept. XXV, going so far as to attach a copy of said opinion to its Motion.  In that case, Judge Delaney seemingly acknowledged that the Nevada Supreme Court had upheld the statute on an as-applied basis.  Inexplicably, she went on to hold that "[t]he crux of this matter hinges upon whether the Statute at issue is facially unconstitutional."  *Id*.  It is simply impossible for a statute to be constitutional on an as-applied based and facially unconstitutional at the same time.

While it may be proud of Judge Delaney's opinion, WFB again fails to apprise this Court of numerous District Court opinions that have ruled in the opposite manner, determining that N.R.S. 116.3116 is, in fact, constitutionally valid.  Wells Fargo is well aware of each of these

opinions as it was the non-prevailing party in most cases.  See *Bank of New York Mellon v. SFR Investments Pool 1, LLC*, et al, Case No. A-15-712683-C, Findings of Fact, Conclusions of Law and Order, (Dist. Ct. Clark County, NV, August 19, 2015)(Johnson)("**[T]he opt-in statutes . . . supplement pre-existing notice scheme to allow creditors who are not otherwise readily ascertainable to become known so as to afford them notification; [R]eading the statutes as a whole, and in conjunction with well-established related law, ensures mortgage holders and other interested parties receive actual notice of the association's impending non-judicial foreclosure sale.**"); *NV Eagles, LLC v. Wells Fargo Bank, N.A.*, Case No. A-13-691922-C, Findings of Fact, Conclusions of Law and Order, (Dist Ct. Clark County, NV, August 10, 2015)(Villani)("**Because the Nevada Supreme Court held in SFR Investments Pool 1 v. U.S. Bank, 130 Nev. Adv. Op. 75, 334 P.3d 408, 418 (2014), that the notices were adequately given and rejected the due process challenge, NRS 116 is facially constitutional because the Bank cannot show there is no set of circumstances that the statute would be valid.**"); *SFR Investments Pool 1, LLC v. Wells Fargo Bank, N.A., et al.*, Case No. A-13-682296-C, Decision and Order (Dist. Ct. Clark County, NV, July 21, 2015)(Bell)("**Chapter 116, if read in a vacuum, could lead to the erroneous interpretation that a mortgage holder is only entitled to receive notice of a homeowners' association's impending foreclosure if that mortgage holder requests such notice from the association; however, this reading would ignore the well-established cannon of statutory interpretation – constitutional avoidance.**"); *LVDG, LLC [Series 138] v. Hank Jin, et al.*, Case No. CV14-00143, Order Denying Motion (Dist. Ct. Washoe County, NV, August 6, 2015)(Stiglich)("**[W]hen read together as a statutory scheme, a homeowner's association is required to provide a notice of default and notice of any foreclosure sale to any beneficiary of a recorded deed of trust.  Such notice is sufficient to comport with the requirements of due process.**").

Pursuant to *Deja Vu Showgirls of Las Vegas*, a statute can only be facially unconstitutional if no set of circumstances exist under which the statute would be valid.  Here, it is abundantly clear that at least one such set of such circumstances exist – those that existed in the matter of *SFR Investments*.  The Nevada Supreme Court specifically held that the lender's

9986 Otterburn

rights to due process were not violated in that case.   The statute cannot be facially unconstitutional by definition and the instant Motion fails.

**13.     THE FORECLOSURE OF AN HOA LIEN DOES NOT IMPLICATE DUE PROCESS BECAUSE NO STATE ACTOR IS INVOLVED**

In order for constitutional due process to be implicated, there must be a state actor. *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001).  If there is no state actor, then due process – including concerns about "notice" – in inapplicable.  *Id.; Rendell Baker v. Kohn,* 457 U.S. 830, 838 (1982) ("if the action of the respondent school is not state action, our inquiry ends).  A homeowners association is not a public or government agency and the foreclosure of an HOA lien does not constitute a taking under constitutional law any more than the foreclosure of a first deed of trust would do so in a standard foreclosure sale.

"The general rule is that the Constitution does not apply to private conduct." *S.O.C., Inc. v. Mirage Casino-Hotel*, 117 Nev. 403, 410, 23 P.3d 243, 247-48 (2001), citing *Hudgens v. N.L.R.B.*, 424 U.S. 507, 513, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976). First, a plaintiff must prove that the conduct complained of was through state action or by "a private actor is performing a function that has traditionally been exclusively performed by the state." *S.O.C., Inc.,* 117 Nev. at 410, 23 P.3d at 247-48 (*citing Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156-159, 98 S.Ct. 1729 (1978)). Next, assuming the state action requirement can be satisfied, the complaining party must show that the state action operated to deprive plaintiff of a significant property interest.  *Flagg Bros.,* 436 U.S. at 156-159.   Finally, having found that a significant property interest will be affected by state action, the court may then turn to the final question of whether adequate procedures and protections were provided to satisfy due process.  *See Charmicor v. Deaner*, 572 F.2d 694, 696 (9th Cir. 1978)(holding that non-judicial foreclosure of a deed of trust pursuant to NRS 107 does not constitute state action for due process purposes).  In this case, because the association is not a state actor or acting "under color of statute," the analysis may end. *S.O.C., Inc. v. Mirage Casino-Hotel*, 117 403, 23, P.3d 243, 247-48 (2001).

The burden of establishing a state actor is on the party claiming a deprivation of a constitutionally protected interest. *Flagg Bros.,* 436 U.S. at 156. Such a burden is steep and

9986 Otterburn

ROGER P. CROTEAU & ASSOCIATES, LTD.
• 9120 W. Post Road, Suite 100 • Las Vegas, Nevada 89148 •
Telephone: (702) 254-7775 • Facsimile (702) 228-7719

"necessarily fact-bound [.]" *Brentwood*, 531 U.S. at 298.   Unlike mechanics liens, which are not only creatures of statute but require the use of the judicial system to enforce, there is no state actor enforcing an association lien.  Even if this Court were to presume state action arising from the adoption of the UCIOA as NRS Chapter 116, a private party relying on a state-created procedural scheme is not sufficient to invoke due process:

> While private misuse of a statute does not describe conduct that can be attributed to the State, the procedural scheme created by the statute obviously is the product of state action. This is subject to constitutional restraints and properly may be addressed in a § 1983 action, **if the second element of the state-action requirement is met as well.**

*Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 941 (1982) (emphasis added). In *Lugar*, the "second element of the state-action requirement" is "the party charged with the deprivation must be a person who may fairly be said to be **a state actor**." *Id.* at 937 (emphasis added). The Nevada Supreme Court has agreed, stating that: "[t]he general rule is that the Constitution does not apply to private conduct." *S.O.C., Inc. v. Mirage Casino-Hotel*, 117 Nev. 403, 410, 23 P.3d 243, 247-48 (2001) *citing Hudgens v. N.L.R.B.*, 424 U.S. 507, 513 (1976)).

The private actor must be "performing a function that has traditionally been exclusively performed by the state." *S.O.C., Inc.*, 117 Nev. at 410, 23 P.3d at 247-48 *citing Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156-59 (1978)). As one federal district court noted, "the power to impose fines or enforce liens are not traditional and exclusive governmental functions." *Snowdon v. Preferred RV Resort Owners Ass'n*, 2:08-cv-01094-RCJ-PAL, at 14:14-15 (D. Nev. Apr. 1, 2009), aff'd, 379 Fed.Appx. 636 (9th Cir. 2010) ("[Association] did not perform the traditional and exclusive public function of municipal governance." *citing Marsh v. Alabama*,  326 U.S. 501 (1946)). Thus, without the state actor requirement being met, private self-help remedies do not implicate due process considerations.  The lack of a state actor would serve to defeat any due process claims. *S.F. Arts & Athletics, Inc. v. USOC*, 483 U.S. 522, 547 (1987) ("Because the USOC is not a governmental actor, the SFAA's claim that the USOC has enforced its rights in a discriminatory manner must fail.").

In this case, the Movant has not offered any evidence of a state actor.  Nor has it offered any state actor analysis.  For this reason alone, even if this Court does not accept the fact that the

9986 Otterburn

**ROGER P. CROTEAU & ASSOCIATES, LTD.**
• 9120 W. Post Road, Suite 100 • Las Vegas, Nevada 89148 •
Telephone: (702) 254-7775  •Facsimile (702) 228-7719

issue raised has been fully and finally determined by the Nevada Supreme Court, the instant Motion must fail.

**14.    THE ISSUE OF COMMERCIAL REASONABILITY DOES NOT CONSTITUTE A BASIS UPON WHICH TO DISMISS THE PLAINTIFF'S COMPLAINT**

WFB argues that the Plaintiff's Complaint must be dismissed because the HOA failed to sell the Property in a commercially reasonable manner.  Assuming that this argument had any merit whatsoever (which it does not), this issue cannot constitute a basis for dismissal at this point in time.   At the very least, factual questions exist which would preclude dismissal at this early stage.

Under Nevada law, mere inadequacy of price, without proof of some element of fraud, unfairness or oppression as accounts for and brings about the inadequacy of price is not sufficient to support a judgment setting aside a foreclosure sale.  *Golden v. Tomiyasu*, 79 Nev. 503, 504 (Nev. 1963).  In this case, the Defendant alleges no facts whatsoever that indicate that the HOA Foreclosure Sale did not proceed in a commercially reasonable manner.  The Motion fails to allege any element of fraud, unfairness or oppression that might indicate that the HOA Foreclosure Sale was not commercially reasonable.  However, even if the Motion were to sufficiently allege such facts or present any evidence whatsoever, questions of fact would remain that would preclude dismissal or summary judgment.

For purposes of this Motion, Plaintiff is willing to concede that the amount that it paid for the Property at the HOA Foreclosure Sale was less than the market value of the Property under conventional market circumstances.   However, this fact is of no concern.  Any claim that the sale of the Property at the HOA Foreclosure Sale was commercially unreasonable because the price obtained was substantially less than the amount of the mortgage loan secured by its deed of trust or the value of the Property is without any basis.  The Nevada Supreme Court has specifically held that "[m]ere inadequacy of price is not sufficient to justify setting aside a foreclosure sale, absent a showing of fraud, unfairness or oppression."  *Long v. Towne*, 98 Nev. 11, 13 (1982).

WFB presents no convincing evidence, nor argument, that the HOA Foreclosure Sale was irregular in any manner, much less that any "fraud, unfairness or oppression" occurred.  Also,

ROGER P. CROTEAU & ASSOCIATES, LTD.
• 9120 W. Post Road, Suite 100  • Las Vegas, Nevada 89148  •
Telephone:  (702) 254-7775  • Facsimile (702) 228-7719

9986 Otterburn

ROGER P. CROTEAU & ASSOCIATES, LTD.
• 9120 W. Post Road, Suite 100 • Las Vegas, Nevada 89148 •
Telephone: (702) 254-7775 • Facsimile (702) 228-7719

1   conspicuously absent from WFB's argument is any mention whatsoever of the fact that it could

2   have appeared at the public HOA Foreclosure Sale and paid the delinquent assessments, but

3   instead, did nothing.  In *SFR Investments Pool 1, LLC v. U.S. Bank, N.A.*,130 Nev., Adv. Op. 75,

4   334 P.3d 408 (2014), the amount due on the notice of delinquency was less than $5,000.00, and

5   the amount due on the mortgage was hundreds of thousands of dollars.  The Nevada Supreme

6   Court upheld the HOA foreclosure sale and noted twice in its opinion that the bank had a simple

7   remedy – to pay the small lien, and if necessary, sue for a refund of any balance which might be

8   due.

9          The state of the law in Nevada prior to the Nevada Supreme Court's decision in the

10  matter of *SFR Investments* obviously affected the prices received for real property sold pursuant

11  to HOA liens.  As a result of the confusion and disparity in the rulings of the various courts prior

12  to the Nevada Supreme Court's decision, potential buyers of property could not be certain of the

13  title they were purchasing.  At the very least, potential buyers expected that they would be forced

14  to expend significant legal fees in association with the pursuit of their legal rights in litigation

15  such as this case.  As a result, the prices that were paid at HOA lien foreclosure sales factored in

16  the legal fees and risk associated with these disputes.  The United States District Court has

17  recognized these facts in the matter of *Bourne Valley Court Trust v. Wells Fargo Bank, N.A.*,

18  2015 U.S. Dist. LEXIS 8057 (D. Nev. Jan. 23, 2015).

19         In *Bourne Valley Court Trust*, Judge Pro stated as follows:

20         The commercial reasonableness here must be assessed as of the time the sale
           occurred. Wells Fargo's argument that the HOA foreclosure sale was
21         commercially unreasonable due to the discrepancy between the sale price and the
           assessed value of the property ignores the practical reality that confronted the
22         purchaser at the sale. Before the Nevada Supreme Court issued *SFR Investments*,
           purchasing property at an HOA foreclosure sale was a risky investment, akin to
23         purchasing a lawsuit. Nevada state trial courts and decisions from the United
           States District Court for the District of Nevada were divided on the issue of
24         whether HOA liens are true priority liens such that their foreclosure extinguishes a
           first deed of trust on the property. *SFR Investments*, 334 P.3d at 412. Thus, a
25         purchaser at an HOA foreclosure sale risked purchasing merely a possessory
           interest in the property subject to the first deed of trust. This risk is illustrated by
26         the fact that title insurance companies refused to issue title insurance policies on
           titles received from foreclosures of HOA super priority liens absent a court order
27         quieting title. (Citation omitted).  Given these risks, a large discrepancy between
           the purchase price a buyer would be willing to pay and the assessed value of the
28         property is to be expected.

9986 Otterburn

**ROGER P. CROTEAU & ASSOCIATES, LTD.**
• 9120 W. Post Road, Suite 100 • Las Vegas, Nevada 89148 •
Telephone: (702) 254-7775 • Facsimile (702) 228-7719

> Moreover, Wells Fargo does not point to any evidence or legal authority indicating the Court must void an HOA foreclosure sale because the purchaser bid only a fraction of the property's assessed value. Wells Fargo does not point to evidence of fraud or any other procedural defects or other irregularities in the conduct of the sale that would require the Court to void the sale, or any evidence indicating the HOA acted in bad faith by selling the property for an amount that would satisfy the unpaid assessments. Nor does Wells Fargo point to evidence or legal authority indicating that beyond selling the property to the highest bidder, the HOA was responsible for protecting Wells Fargo and Johnson's interests in addition to the homeowners' interests. See *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028-31 (9th Cir. 2001) (stating that a court need not "comb the record" looking for a genuine issue of material fact if the party has not brought the evidence to the court's attention) (quotation omitted)). Thus, no genuine issue of material fact remains as to whether the HOA foreclosure sale was commercially unreasonable.

*Bourne Valley Court Trust*, 2015 U.S. Dist. LEXIS 8057 at *12-14. Based upon his analysis, Judge Pro rejected the bank's arguments and found that the sale of the property by the HOA was commercially reasonable under the circumstances. As a result, the Court granted summary judgment quieting title in favor of the Bourne Valley Court Trust over the claims of the formerly secured deed of trust holder.

Here, as in *Bourne Valley Court Trust*, WFB has presented absolutely no evidence of any fraud or irregularity in the HOA Foreclosure Sale. Like *Bourne Valley Court Trust*, the HOA Foreclosure Sale at issue herein took place prior to the Nevada Supreme Court's decision in the matter of *SFR Investments*, at a time when significant risk existed. Based upon the foregoing, there was nothing unreasonable about the HOA Foreclosure Sale at which the Plaintiff purchased the Property. WFB has failed to point to a single fact suggesting otherwise.

## 15.   EACH OF THE PLAINTIFF'S CAUSES OF ACTION SETS FORTH A VALID CLAIM FOR RELIEF

WFB weakly asserts that each of the Plaintiff's remaining causes of action other than Quiet Title fails to state a claim for relief. All of these arguments are primarily based upon WFB's erroneous claim that N.R.S. §116.3116 *et seq.* is unconstitutional. Each argument is briefly addressed below.

### A.   Equitable Relief- Wrongful Foreclosure

WFB asserts that Plaintiff's claim for wrongful foreclosure is time barred. As set forth

9986 Otterburn

above, the proper statute of limitations for the recovery of real property is 5 years.  As a result,

WFB's argument is without merit.

B.    Unjust Enrichment and Equitable Mortgage

Plaintiff's Complaint alleges as follows:

86.    Plaintiff expended significant funds and resources in connection with the acquisition and maintenance of the Property.
87.    In the event that the Plaintiff does not maintain sole and exclusive title to and possession of the Property, the  Defendants will obtain substantial benefits from the funds and resources expended by the Plaintiff.
88.    Upon information and belief, Defendants sold the Property for significant monetary gain.
89.    All proceeds received by the Defendants from the sale of the Property rightfully belong to the Plaintiff as the owner of the Property.
90.    It would be unjust for the Defendants to accept and retain such benefits without compensating Plaintiff for the value of the benefits which they received.

Complaint, ¶86-90.  It is unclear how WFB does not understand the benefit that it accrued by

virtue of its wrongful sale of the Property to itself.  WFB purported to sell the Property pursuant

to its extinguished First Deed of Trust for the sum of $222,572.97.  WFB thereafter likely

fraudulently recovered insurance proceeds from HUD upon transferring the Property to HUD.

Assuming for the sake of argument that the Plaintiff does not recover title to the Property, the

money that Wells Fargo received as a result of its fraudulent Bank Foreclosure Sale rightfully

belongs to the Plaintiff.  When accepted as true, it is readily apparent that the Plaintiff has stated

a valid claim for relief.

C.    Equitable Mortgage

Plaintiff's claim for Equitable Mortgage is an *in rem* cause of action.   Plaintiff asserts

that the Bank Foreclosure Sale was unauthorized, void and ineffective and that Plaintiff remains

the rightful owner of the Property.  To the extent that the Plaintiff is not awarded free and clear

title to the Property, any damages that are awarded to it should be secured by the Property under

equitable grounds.  When accepted as true, this claim also states a valid claim for relief.

D.    Slander of Title

In support of its claim that the Plaintiff's Slander of Title claim must fail, WFB

essentially asserts that its erroneous and faulty interpretation of the law, and its reliance thereon,

ROGER P. CROTEAU & ASSOCIATES, LTD.
• 9120 W. Post Road, Suite 100  •  Las Vegas, Nevada 89148 •
Telephone: (702) 254-7775  • Facsimile (702) 228-7719

9986 Otterburn

ROGER P. CROTEAU & ASSOCIATES, LTD.

• 9120 W. Post Road, Suite 100 • Las Vegas, Nevada 89148 •
Telephone: (702) 254-7775 • Facsimile (702) 228-7719

should grant it a free pass.  It has often been said that ignorance of the law is not an excuse. WFB should not be excused for its intentional and knowing attempted taking of the Plaintiff's real property simply because it was not capable of proper interpretation of the law.

Plaintiff asserts that the First Deed of Trust was extinguished as a matter of law at the time of the HOA Foreclosure Sale.  Thereafter, although it possessed no valid security interest in the Property, WFB proceeded to record various documents asserting the enforcement of such an interest and ultimately wrongfully sold the Property at the Bank Foreclosure Sale.   For purposes of this Motion, the allegations of the Complaint must be accepted as true.  Thus, WFB knew or should have known that its First Deed of Trust was extinguished at the time that it initiated its foreclosure proceedings.   Nevertheless, it recorded these documents and ultimately purported to divest the Plaintiff of ownership of its Property.  All of these actions have served to disparage, slander and cloud the title of the Plaintiff.

When accepted as true, the allegations of the Plaintiff's Complaint state a valid claim for Slander of Title.  Discovery has not commenced at this point in time.  The Defendant's Motion asserts that "there can be no malice if Defendants have reasonable grounds for their belief that they have a claim to the Property" and that "there was no false or malicious communications as a matter of law."  Motion, p. 31.  However, the Defendant has presented not so much as an affidavit as evidence asserting that they possessed reasonable grounds for their erroneous beliefs. At the very least, when accepted as true, the allegations of the Plaintiff's Complaint state a valid claim for relief.

E.      Conversion

WFB asserts that the Plaintiff's claim for Conversion fails because conversion is unique to personal property and real property cannot be converted.  Defendant ignores the fact that Plaintiff's Complaint alleges that "Defendants have received and retained monies that rightfully belong to the Plaintiff."  Complaint, ¶120.  Money clearly constitutes personal property that can be converted.  Because WFB has retained the monies that rightfully belong to the Plaintiff, the Plaintiff has stated a valid claim for relief.

9986 Otterburn

E.    Equitable Relief - Rescission

The Plaintiff's final cause of action is entitled "Equitable Relief - Rescission."  Pursuant to this claim, the Plaintiff requests that the Court rescind the Bank Foreclosure Sale and return the parties to the positions they held prior to the conveyance.  Complaint, ¶138.  WFB asserts that rescission is not a claim but rather a remedy.  While this may be the case, the Plaintiff's cause of action is actually for equitable relief and is titled as such.  While the term "rescission" is utilized, the cause of action could just as easily be entitled "Equitable Relief - Unwind Sale."

At its heart, the final cause of action simply seeks to cancel the Bank Foreclosure Sale.  While the relief requested may be granted pursuant to the Plaintiff's claim for Quiet Title, it is an alternative claim that the Plaintiff is entitled to make.   Under these circumstances, no good cause does not exist to dismiss the claim.

**16.    PUBLIC POLICY DOES NOT SERVE TO SAVE THE BANK FROM ITS OWN NEGLIGENT AND FOOLISH ACTIONS AND INACTIONS**

Astonishingly, WFB's final argument seems to suggest that this Court should simply ignore the Nevada Supreme Court's recent binding precedent that conclusively resolved the dispute that previously existed regarding the force, effect and interpretation of N.R.S. Chapter 116.  WFB makes a variety of public policy arguments that were all considered by the Nevada Supreme Court.  During the course of these arguments, WFB asserts that *"SFR v. U.S. Bank* creates a regime in conflict with those long-standing policies"; that "the Statute, as interpreted in *SFR v. U.S. Bank*, creates a statutory scheme which permanently and precipitously deprives the homeowner of his or her entire interest in the property"; that "the *SFR v. U.S. Bank* decision violates public policy and creates an absurd result"; and that "*SFR v. U.S. Bank* contradicts and violates these well-established homeowner protections and creates an absurd result."   The only conclusion to be reached is that WFB and its counsel believe that this Court should ignore the Nevada Supreme Court's binding precedent and "do its own thing."   To say that this is rather disrespectful is an understatement.

It is clear that WFB and its counsel have not yet come to grips with the Nevada Supreme Court's decision in the matter of *SFR Investments*.   Whether they like it or not, the Nevada

9986 Otterburn

ROGER P. CROTEAU & ASSOCIATES, LTD.
• 9120 W. Post Road, Suite 100  • Las Vegas, Nevada 89148  •
Telephone: (702) 254-7775  • Facsimile (702) 228-7719

ROGER P. CROTEAU & ASSOCIATES, LTD.

• 9120 W. Post Road, Suite 100 • Las Vegas, Nevada 89148 •
Telephone: (702) 254-7775 • Facsimile (702) 228-7719

Supreme Court has finally determined that (1) a homeowners association lien possesses actual priority over a first deed of trust to the extent of the super-priority portion, and that (2) a first deed of trust is extinguishable via the non-judicial foreclosure of a homeowners association lien. Had the Nevada Supreme Court believed the statute to be unconstitutional during its detailed analysis, it likely would have determined as much.  It did not and the reasons for that are clear.

The Nevada Supreme interpreted the statute in a reasonable manner, giving it its plain meaning and construing the statute in its whole.  After analyzing the statute in detail, the Court determined that the statute operates in the manner that it is intended based upon the various authorities that have been cited by LVDG and similarly situated parties since the outset of the many litigations that have been pending over the course of the past several years.   LVDG respectfully suggests that WFB would be well advised to make an effort to understand this and adjust its policies and procedures if it has not already done so.  Crying over spilt milk is not likely to prove to be a benefit.

### III.

### CONCLUSION

For all the reasons set forth above, the instant Motion must be denied.  The Nevada Supreme Court has finally resolved the issues that WFB continues to complain of.   A simple reading of the statute, together with N.R.S. Chapter 107 and N.R.S. §111.320, proves that notice to secured lenders is required.  The Nevada Supreme Court analyzed the issue of due process in *SFR Investments* and determined that due process was not denied under the facts of said case. Because the statute was deemed constitutional under that set of facts, it cannot be facially unconstitutional.   The Defendants' remaining arguments likewise fail.  When the allegations of the Complaint are accepted as true, the Plaintiff has stated valid claims upon which relief can be granted.

The extinguishment of first deeds of trust by the foreclosure of HOA liens is based upon black letter lien law.  Indeed, the effect that the foreclosure of an HOA lien has upon a first deed of trust that fails to satisfy the portion of the HOA lien having priority is no different than the effect that the foreclosure of a first deed of trust has upon a second deed of trust that fails to

9986 Otterburn

**ROGER P. CROTEAU & ASSOCIATES, LTD.**
• 9120 W. Post Road, Suite 100 • Las Vegas, Nevada 89148 •
Telephone: (702) 254-7775 • Facsimile (702) 228-7719

1    satisfy the superior lien.   By choosing to not satisfy an HOA lien, prevent foreclosure, and

2    preserve its collateral, a secured lender has only itself—not a conflict of laws—to blame for its

3    loss.  *Freedom Mortg. Corp. v. Las Vegas Dev. Grp., LLC*, 2015 U.S. Dist. LEXIS 66249, 26 (D.

4    Nev. May 19, 2015).

5         The fact that WFB lost its security interest in the Property has nothing to do with the

6    Constitutions of the United States or Nevada.  It has everything to do with the fact that WFB

7    negligently allowed its security interest in the Property to be extinguished.  This occurred at the

8    time of the HOA Foreclosure Sale.  Although WFB could have protected its security interest by

9    paying the super-priority portion of the HOA lien, it obstinately refused to do so.  Instead, it

10   chose to rely upon its faulty interpretation of N.R.S. Chapter 116.  This faulty interpretation led it

11   do nothing and thereby suffer the loss of its security.  As a result of its faulty interpretation of the

12   law, WFT lost any security interest upon which to foreclose.  Nevertheless, it proceeded to

13   purport to divest the Plaintiff of ownership of its real property by foreclosing upon its invalid and

14   extinguished First Deed of Trust.  The purported Bank Foreclosure Sale and all transfers that

15   occurred thereafter were void and ineffective.  The Plaintiff has stated valid claims for relief and

16   the instant Motion must be denied.

17        DATED this ____21ˢᵗ_____ day of August, 2015.

18                                                                ROGER P. CROTEAU & ASSOCIATES, LTD.

19

20                                                                 /s/ *Timothy E. Rhoda*
                                                                  ROGER P. CROTEAU, ESQ.
21                                                                Nevada Bar No. 4958
                                                                  TIMOTHY E. RHODA, ESQ.
22                                                                Nevada Bar No. 7878
                                                                  9120 West Post Road, Suite 100
23                                                                Las Vegas, Nevada 89148
                                                                  (702) 254-7775
24                                                                ***Attorney for Plaintiff***
                                                                  **LAS VEGAS DEVELOPMENT GROUP, LLC**
25

26

27

28

9986 Otterburn

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this _____21st_____ day of August, 2015, I served via the United States District Court CM/ECF electronic filing system, the foregoing **OPPOSITION TO WELLS FARGO BANK, N.A.'S MOTION TO DISMISS** to the following parties:

Terry A. Moore
Marquis & Aurbach
10001 Park Run Drive
Las Vegas, NV 89145
702-382-0711
tmoore@marquisaurbach.com
***Attorney for Defendants***
***Evergreen Moneysource Mortgage***
***Company, Crystalia L Y. Yfantis,***
***and Shirley C. Yfantis***

Troy K. Flake
United States Attorney
333 Las Vegas Blvd So., Ste. 5000
Las Vegas, NV 89101-
702-388-6336
702-388-6787 (fax)
troy.flake@usdoj.gov
***Attorney for Defendant***
***Secretary of the Department of***
***Housing and Urban Development***

Gregory L Wilde
Tiffany & Bosco P.A.
212 South Jones Blvd.
Las Vegas, NV 89107
(702) 258-8200
(702) 258-8787 (fax)
efilenv@tblaw.com
***Attorney for Defendant***
***National Default Servicing Corporation***

Justin A Shiroff
Snell & Wilmer LLP
3883 Howard Hughes Pkwy., Ste. 1000
Las Vegas, NV 89169
702-784-5200
702-784-5252 (fax)
jshiroff@swlaw.com
***Attorney for Defendant***
***Wells Fargo Bank, N.A.***

    /s/ *Timothy E. Rhoda*
An employee of ROGER P. CROTEAU &
ASSOCIATES, LTD.

**ROGER P. CROTEAU & ASSOCIATES, LTD.**
• 9120 W. Post Road, Suite 100 • Las Vegas, Nevada 89148 •
Telephone: (702) 254-7775 • Facsimile (702) 228-7719

9986 Otterburn