1
2  Richard C. Gordon, Esq.
   Nevada Bar No. 9036
3  Robin E. Perkins, Esq.
   Nevada Bar No. 9891
4  Justin A. Shiroff, Esq.
   Nevada Bar No. 12869
5  SNELL & WILMER L.L.P.
   3883 Howard Hughes Parkway, Suite 1100
6  Las Vegas, NV 89169
   Telephone:  (702) 784-5200
7  Facsimile:  (702) 784-5252
   rgordon@swlaw.com
8  rperkins@swlaw.com
   jshiroff@swlaw.com
9
   *Attorneys for Defendant Wells Fargo Bank, N.A.*
10
11              **UNITED STATES DISTRICT COURT**
12                    **DISTRICT OF NEVADA**
13

14  LAS VEGAS DEVELOPMENT GROUP,           Case No. 2:15-cv-01127-APG-CWH
15  LLC, a Nevada limited liability company,
16                        Plaintiff,
17  vs.                                     **WELLS FARGO BANK, N.A.'S REPLY
                                            IN SUPPORT OF MOTION TO
18  SHIRLEY C. YFANTIS, an individual;      DISMISS**
    CRYSTALIA L. YFANTIS, an individual;
19  WELLS FARGO BANK, N.A., a National
    Banking Association; NATIONAL
20  DEFAULT SERVICING CORPORATION;
    an Arizona corporation; MARIA
21  BARROGA, an individual; ANASTACIA
    CEPEDA, an individual; SECRETARY OF
22  THE DEPARTMENT OF HOUSING AND
    URBAN DEVELOPMENT, a federal
23  governmental agency; EVERGREEN
    MONEYSOURCE MORTGAGE
24  COMPANY, a Washington corporation;
    DOE individuals 1 through XX; and ROE
25  CORPORATIONS 1 through XX,
26                        Defendants.
27
28

*(left margin vertical text)* Snell & Wilmer L.L.P. / LAW OFFICES / 3883 Howard Hughes Parkway, Suite 1100 / Las Vegas, Nevada 89169 / 702.784.5200

Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), by and through its undersigned counsel, hereby files this Reply in Support of Motion to Dismiss Plaintiff Las Vegas Development Group, LLC's ("Plaintiff's") Complaint.

This Reply is based on the Memorandum of Points and Authorities below, the papers and pleadings on file with the Court, and any oral argument that this Court may entertain.

Dated: November 2, 2015.                          SNELL & WILMER L.L.P.


By:   /s/ Robin E. Perkins
      Richard C. Gordon, Esq.
      Robin E. Perkins, Esq.
      Justin A. Shiroff, Esq.
      3883 Howard Hughes Parkway
      Suite 1100
      Las Vegas, Nevada 89169
      *Attorneys for Defendant Wells Fargo Bank, N.A.*

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Wells Fargo's Motion to Dismiss seeks dismissal of Plaintiff's complaint on the following grounds.  First, NRS 116.3116 *et seq.* (the "Statute") fails to provide proper notice to Wells Fargo, and thus facially violates its constitutionally protected due process rights.  Second, the Statute, as it has now been interpreted in *SFR v. U.S. Bank* and as it applies to the facts of this case, violates the Property Clause of the United States Constitution.  At the time of the HOA foreclosure, the Department of Housing and Urban Development ("HUD") had an interest in the Property, which is evidenced by the fact that HUD took title to the property after Wells Fargo's foreclosure.  Third, the Supreme Court's interpretation of the Statute further violates the Supremacy Clause by denying the federal government its interest in the real property at issue.  Fourth, *SFR v. U.S. Bank* did not address the issue of whether these sales are commercially unreasonable, expressly identifying this as an open question.  Finally, the holding in *SFR v. U.S. Bank* frustrates significant public policies and has the potential to detrimentally impact Nevada homeowners, potential purchasers, the real estate market as a whole, and those industries

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

intimately tied to the real estate market.  Plaintiff's opposition fails to establish how any one, or all, of Wells Fargo's grounds for dismissal fails as a matter of law.

Additionally, Wells Fargo seeks dismissal of Plaintiff's causes of action on the grounds that they fail as a matter of law outside of the constitutional and public policy arguments described above.  Each of these claims fail because they either fail to allege the required elements of the claim, they are precluded as a matter of law, or they are duplicative of other causes of action. Plaintiff's Opposition fails to establish how any one, or all, of Wells Fargo's grounds for dismissal fail as a matter of law.

## II.    ARGUMENT

### A.   The Statute of Limitations has Expired on Plaintiff's Wrongful Foreclosure Claim.

Plaintiff's Opposition attempts to avoid the fact that Plaintiff failed to bring its wrongful foreclosure claim within the time period required by NRS 107.080 by claiming that NRS 107.080 does not apply.[1]  This is in spite of the fact that Wells Fargo foreclosed by exercising its non-judicial power of sale in its Deed of Trust, which is precisely the type of foreclosure that Chapter 107 governs.  Instead, Plaintiff attempts to avoid the fact that its claim is well outside the statute of limitations by asserting that "NRS § 107.080 is inapplicable to the facts at hand" because "no valid deed of trust existed at the time of the Bank Foreclosure Sale."  (Opp'n 8:17-19.)

While it disclaims the applicability of Chapter 107, Plaintiff offers no alternative authority under which it brings its wrongful foreclosure claim, and there is none.  Instead, Plaintiff claims simply that "because the sale was void at the outset, it is as though it never occurred."  (Opp'n 21:12-14.)  But grounds for relief under that type of allegation is not a claim for wrongful foreclosure, but is instead a claim to quiet title to the Property.  In fact, Plaintiff *admits* that this claim is the same as its claim for quiet title.  Plaintiff argues that it has five years to bring an action for quiet title. (Opp'n 21:20-22.)  But that limitation period is not relevant to the wrongful foreclosure claim brought under Chapter 107.  At issue here is Plaintiff's wrongful foreclosure claim which is time-barred if brought under Chapter 107.  And if not brought under Chapter 107,

---

[1] Plaintiff appears to misinterpret Wells Fargo's argument regarding the statute of limitations. Wells Fargo does not dispute that Plaintiff's Quiet Title action is not time-barred, but as a matter of law, Plaintiff's claim for wrongful foreclosure is time-barred.

Snell & Wilmer
L.L.P.
LAW OFFICES
1883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

it is nothing more than a re-styled claim for quiet title and/or declaratory relief.  Indeed, in both causes of action Plaintiff is seeking the same relief under the same theory: that the Court declares that Wells Fargo's Deed of Trust was extinguished by the HOA foreclosure and that title rests in Plaintiff.  (Compl. ¶¶ 69-82, 125-129.)  Accordingly the wrongful foreclosure cause of action is not only time-barred but duplicative of Plaintiff's quiet title claim and therefore must be dismissed.

**B.   Wells Fargo Is Entitled to Make All Constitutional Arguments.**

Plaintiff's Motion contends that Wells Fargo lacks standing to raise Supremacy Clause and Property Clause arguments as HUD[2] did not have an interest in the Property until after the HOA Foreclosure Sale and that even if HUD had an interest in the Property, only the federal government has standing to raise these arguments.  This is incorrect.

1.   The Loan at Issue Here Is Federally Insured by the FHA.

Plaintiff attempts to argue that the loan at issue in this case was not federally insured and was only transferred to HUD after Wells Fargo foreclosed.  However, it is clear from the Loan Document, that the loan was federally insured since its inception.  Plaintiff ignores that the Deed of Trust itself states on is face that it is an FHA loan and includes an FHA case number on the Planned Unit Development Rider.  As detailed in the Motion to Dismiss, page one of the Deed of Trust specifically identifies the loan as an FHA loan and includes the loan's FHA case number.  (Exhibit A to RJN.)[3]   Additionally, the footer on every page of the Deed of Trust further identifies the loan as FHA insured as "FHA Nevada Deed of Trust."  (*Id.*)

Importantly, this Court has previously held that the documentary evidence alone is sufficient to establish an FHA interest. In *Saticoy Bay, LLC Series 7342 Tanglewood v. SRMOF II 2012-1 Trust*, the Court ruled that the Deed of Trust itself was sufficient evidence to establish that the loan was federally insured.  The Court relied on the fact that "the deed of trust exhibits an

---

[2] All terms not herein defined shall have the definitions assigned to them in the Motion to Dismiss.
[3] Courts can take judicial notice of matters of public record.  *United States v. 14.02 Acres of Land*, 547 F.3d 943, 955 (9th Cir. 2008) (the court "may take judicial notice of matters of public record") (citations and internal quotation marks omitted); *Valasquez v. Mortgage Elec. Registration Sys., Inc*., No. C 08-3818 PJH, 2008 WL 4938162, at *2–*3 (N.D. Cal. Nov. 17, 2008) (taking judicial notice of: (1) deed of trust, (2) assignment of deed of trust, (3) notice of default and election to sell under deed of trust, (4) substitution of trustee, and (5) rescission of notice of default because they were publicly recorded).

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

FHA case number as well as a notation reading 'FHA Nevada Deed of Trust with MERS.'"  No. 2:13-CV-01199 JCM-VCF, 2015 WL 1990076, *4 (D. Nev. April 30, 2015).  The Court also noted the deed of trust's reference to the Single Family Mortgage Foreclosure Act of 1994, "which creates uniform standards for foreclosure of mortgages held under the National Housing Act" in finding the deed of trust "sufficient to show that the loan at issue was federally insured." *Id.*  Just like in *Saticoy Bay*, the Deed of Trust at issue here contains ample evidence on its face to confirm that the loan is insured by the FHA.

### 2.  Wells Fargo Is Entitled to Make Supremacy and Property Clause Arguments.

Recent decisions from the District of Nevada establish that Wells Fargo is entitled to raise Supremacy Clause and Property Clause issues in the context of FHA-insured loan.

In *Thunder Properties,* Judge Jones rejected the argument that the lender lacked standing to raise Supremacy Clause arguments based on an FHA-insured loan holding that "HUD's absence as a party does not impact the Court's ability to resolve this case." *Thunder Properties, Inc. v. Wood*, No. 3:14-CV-00068-RCJ-WG, 2015 WL 1926768 (D. Nev. Apr. 28, 2015) ("Accordingly, an evaluation of whether N.R.S. 116.3116 as applied to federally insured mortgages conflicts with either of these constitutional provisions [the Supremacy and Property Clauses] is a question of law that may be raised by any party, and not just a government agency.").  Similarly, in *Saticoy Bay, LLC Series 7342 Tanglewood v. SRMOF II 2012-1 Trust*, Judge Mahan rejected the argument that the lender lacked standing to raise preemption arguments on behalf of HUD, who was not a party to the suit. No. 2:13-CV-01199 JCM-VCF, 2015 WL 1990076 (D. Nev. April 30, 2015).  The Court held that "the absence of HUD from this suit… [does] not dictate the court's holding in this case" and that the lender was "entitled to argue that state law is constitutionally preempted whether or not the government is a party to the case." *Id.* at *4.  Wells Fargo has standing to raise these issues in this case.[4]

---

[4]Plaintiff contends that HUD has not sought to argue that the Statute is unconstitutional based on the Supremacy Clause.  However, Plaintiff fails to recognize that it only has brought two causes of action against the United States (unjust enrichment and slander of title) and the United States has filed a Motion to Dismiss seeking to dismiss both causes of action as this Court lacks jurisdiction.  *See* United States' Motion to Dismiss, [Docket No. 43].  Thus, the United States does not need to raise any supremacy or property clause arguments at this stage.  Further, HUD's election does not waive or undermine its right and ability to seek dismissal or judgment on any supremacy or property clause issue in the future; and further does not undermine Wells Fargo's right to assert these issues here.

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

Snell & Wilmer

L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

Plaintiff cites extensively to the *Freedom Mortgage* decision for the proposal that the Statute does not violate the Supremacy Clause and that it does not confer a private right of action.

As already shown above, the *Freedom Mortgage* decision is an outlier among the other decisions from this Court that have addressed the Supremacy Clause and its application to the Statute. *See Collegium Fund,* 2014 WL 4635607; *Washington & Sandhill,* 2014 WL 4798565; *Saticoy Bay*, 2015 WL 1990076. In *Freedom Mortgage*, the court improperly utilized a preemption analysis to conclude that the Statute did not run afoul of the Supremacy Clause. *Freedom Mortgage*, No. 2:14-CV-01928-JAD-NJ, 2015 WL 2398402, 5 (D. Nev. May 19, 2015) ("Federal law can preempt state law under the Supremacy Clause in three ways: express, field, or conflict preemption."). *Freedom Mortgage* conflates two different, albeit, related principles. Preemption exists only because of the Supremacy Clause. *Nanopierce Technologies, Inc. v. Depository Trust & Clearing Corp.*, 123 Nev. 362, 370, 168 P.3d 73, 79 (2007) ("The preemption doctrine, which provides that federal law supersedes conflicting state law, arises from the Supremacy Clause of the United States Constitution."). But application of the Supremacy Clause is broader than strict preemption. There are situations, such as this one, where the Supremacy Clause applies because "the [state] legislation ... interferes with the federal purpose or operates to impede or condition the implementation of federal policies and programs." *Rust v. Johnson*, 597 F.2d 174, 179 (9th Cir. 1979); *see also Resolution Trust Corp. v. State of Cal.*, 851 F.Supp. 1453 (C.D. Cal. 1994) (concluding California's unclaimed property law violates the Supremacy Clause and is *also* preempted by federal statute). Other judges from this District of Nevada have applied the standard of *Rust v. Johnson*, 597 F.2d 174, 179 (9th Cir. 1979), to conclude that the Statute violates the Supremacy Clause. *See Washington & Sandhill*, 2014 WL 4798565, *5; *Saticoy Bay LLC*, 2015 WL 1990076, *2. *Freedom Mortgage* seemingly rejects the broader *Rust* standard in favor of a strict preemption analysis (even though it cites to *Rust* for other reasons). *See Freedom Mortgage*, 2015 WL 2398402, 4, nn. 30 and 32. Indeed, the Statute interferes with an important federal purpose and operates to impede the implementation of federal policies and programs and, as such, runs afoul of the Supremacy Clause. *Rust*, 597 F.2d at 179.

Here, the Statute impedes, burdens, or otherwise interferes with an important federal program—the FHA insurance program—by depriving the federal government of any ability to mitigate its losses if insurance proceeds have been paid out. As outlined above, applying Nevada's Statute to extinguish a federally insured interest will not only harm Nevada citizens, it will financially harm the United States and its federal mortgage insurance programs. In such circumstances, the Supremacy Clause must apply to protect "the federal program against loss" and to avoid the termination of FHA-insured loans in Nevada.

Accordingly, the Wells Fargo's Motion should be granted because the Supremacy Clause prevented the HOA foreclosure from extinguishing Wells Fargo's Deed of Trust on the Property.

**C.  NRS 116.3116 *et seq.* Violates Wells Fargo's Constitutionally Protected Due Process Rights and Cannot Stand.**

NRS 116.3116 *et seq*. does not require sufficient notice to a lender in violation of both the Nevada and United States Constitutions.  As such, the foreclosure sale cannot stand.  Contrary to Plaintiff's assertion, reference to NRS 107.090 does not cure the notice issues in the Statute, which require affirmative action by a party with an interest in the property before notice must be provided.  Requiring Wells Fargo to "opt-in" before it is entitled to notice violates its due process rights and renders the Statute unconstitutional on its face.

> 1.  Plaintiff's reliance on NRS 107.090 fails because it renders the notice provisions of NRS 116.3116 *et seq*. meaningless and violates longstanding canons of statutory construction.

As detailed in Wells Fargo's Motion, the notice provisions expressly set forth in the Statute are insufficient to comport with due process.  First, NRS 116.31163 only requires notice to a party "who has *requested* notice pursuant to NRS 107.090 or 116.31168" or the holder of a security interest who "*has notified the association*, 30 days before the recordation of the notice of default, of the existence of the security interest."  (emphasis added).  Second, NRS 116.311635 only requires notice of the time and place of the sale to a party entitled to notice under NRS 116.31163(1)(b), and a holder of a "recorded security interest or the purchaser of the unit, *if either of them has notified the association*, before the mailing of the notice of sale."  Neither of these

Snell & Wilmer

L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

1    opt-in provisions mandate notice to a lender without some affirmative act on the part of the

2    lender, even where the lender's security interest has been recorded.

3         To circumvent the constitutional defects of the Statute, Plaintiff relies upon NRS 107.090

4    and NRS 111.300 *et seq.* to suggest that NRS 116.3116 *et seq.* mandates actual notice to all

5    subordinate lien holders.   (Opp'n 19:21-23:20.)   Plaintiff's contention is without merit and

6    violates longstanding principles of statutory construction.   Specifically, Plaintiff asserts that the

7    Statute mandates actual notice pursuant to NRS 116.31168(1) which provides that: "[t]he

8    provisions of NRS 107.090 apply to the foreclosure of an association's lien as if a deed of trust

9    were being foreclosed."   (Opp'n 23:2-4)   Plaintiff contends that this reference to NRS 107.090

10   salvages the Statute by requiring actual notice to the lender.[5]   Unfortunately for Plaintiff, reliance

11   upon NRS 107.090 renders the specific notice provisions of NRS 116.3116 *et seq.* meaningless

12   and effectively reads them out of the Statute.

13        Plaintiff considers NRS 107.090 in a statutory vacuum and relies upon the reference to

14   NRS 107.090 to the exclusion of the express and detailed notice provisions set forth in NRS

15   116.3116 *et seq.*   Plaintiff's disregard for the Statute's notice provisions is troubling, particularly

16   because it is the court's task to look at the statutory scheme as a whole and endeavor to give

17   effect to every provision.   "[I]t is the duty of this court, when possible, to interpret provisions

18   within a common statutory scheme '*harmoniously with one another* in accordance with the

19   general purpose of those statutes' and to avoid unreasonable or absurd results, thereby giving

20   effect to the Legislature's intent."   *S. Nevada Homebuilders Ass'n v. Clark County,* 121 Nev. 446,

21   449, 117 P.3d 171, 173 (2005) (emphasis added).   Additionally, this Court "must give its terms

22   their plain meaning, considering its provisions as a whole so as to read them 'in a way that would

23   not render words or phrases superfluous or make a provision nugatory.'"   *S. Nevada*

24   *Homebuilders Ass'n v. Clark County,* 121 Nev. 446, 449, 117 P.3d 171, 173 (2005); *Harris*

25

26

27   _____

[5] NRS 107.090 titled "***Request* for notice of default and sale"** states that the trustee or person authorized to record

28   the notice of default and notice of sale serve the notice via registered or certified mail to "[e]ach other person with an
     interest whose interest or claimed interest is subordinate to the deed of trust."   NRS 107.090(3)(b).

Snell & Wilmer
L.L.P.
LAW OFFICES
1883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

*Assocs. v. Clark County Sch. Dist.*, 119 Nev. 638, 641-42, 81 P.3d 532, 534-35 (2003) ("no part of a statute should be rendered meaningless").

If, as Plaintiff claims, the incorporation of NRS 107.090 mandates notice to the lender, the express notice provisions set out in NRS 116.31163 and NRS 116.311635 would be superfluous and meaningless. As set forth above, NRS 116.31163 and NRS 116.311635 both require any secured creditor – either senior or subordinate – to give notice to an association before the association has an obligation to provide the notice of default or notice of sale. Nevertheless, these provisions would effectively be written out of the Statute if NRS 107.090 became the sole governing notice provision. There would simply be no reason to include the very detailed and express opt-in provisions in the Statute if all that the legislature intended was to mimic, verbatim, the notice requirements of NRS 107.090.

### 2. Plaintiff's reliance on NRS 107.090 fails because the specific provisions in NRS 116.3116 *et seq*. control over the generic provisions in NRS 107.090.

Plaintiff asserts that NRS 107.090's notice provision trumps the express notice provisions set forth in NRS 116.3116 *et seq*. This assertion is contrary to Nevada's long-standing interpretive rule that a specific statute controls over the more general. *State Tax Comm'n v. American Home Shield of Nevada, Inc.*, 127 Nev. Adv. Op. 31, 254 P.3d 601, 605 (2011) (*citing Nevada Power Co. v. Haggerty*, 115 Nev. 353, 364, 989 P.2d 870, 877 (1999) (holding that "[a] specific statute controls over a general statute."). NRS 116 governs common-interest ownership communities, and NRS 116.3116 *et seq*. governs the foreclosure of an HOA's assessment lien. Alternatively, NRS 107.090 governs the foreclosure of a deed of trust. The Statute includes detailed and express provisions regarding what notice must be given and to whom. As to the lender, the Statute's notice provisions require some affirmative action by the lender to "opt in" before notice becomes mandatory. Despite Plaintiff's assertions to the contrary, this is, and remains, the Statute's primary constitutional defect.

There are only two references to NRS 107.090 in the Statute. First, NRS 116.31163(1) states that a notice of default and election to sell only needs to be mailed to "[e]ach person *who has requested notice pursuant to NRS 107.090* or 116.31168." (emphasis added.) This provision,

even though referencing NRS 107.090, expressly requires a party to request notice – take affirmative action.  Second, NRS 116.31168(1) makes clear that a *request must be made* pursuant to NRS 107.090, stating that *"[t]he request* must identify the lien by stating the names of the unit's owner and the common-interest community." (emphasis added).  Moreover, NRS 116.31168 is titled: "Foreclosure of liens: *Requests by interested persons* for notice of default and election to sell; right of association to waive default and withdraw notice or proceeding to foreclose." (emphasis added).  Both of these provisions specifically identify and require a request from the interested party, even taking into account their reference to NRS 107.090.  Accordingly, these provisions still mandate a request for notice as a requirement for actually receiving notice, even if NRS 107.090 governs as Plaintiff suggests.

If the Nevada Legislature intended the notice provisions in NRS 107.090 to trump the specific provisions of NRS 116.116 *et seq.*, it could have simply referred to NRS 107.090 and excluded all of the detailed and express notice provisions in the Statute.  But it did not.  Instead, the legislature crafted specific and direct provisions governing who is entitled to receive notice and under what circumstances – provisions that differ from, and arguably contradict, the notice requirements of NRS 107.090.  In applying Nevada's rules of statutory construction, this Court cannot disregard the specific notice provisions of the Statute, in favor of a more general provision found in a different chapter and governing a different type of foreclosure.  As a matter of law, the broad and generic provisions of NRS 107.090 cannot supersede or negate the detailed and express notice provisions of NRS 116.3116 *et seq.*  Simply put, Plaintiff's reliance on NRS 107.090 as a catch-all provision does not correct the Statute's constitutional infirmities.

3.  Recordation of a deed of trust does not qualify as a request for notice under the Statute.

Under the Statute, recordation of a deed of trust does not qualify as a request for notice under NRS 116.3116 *et seq.*  Plaintiff's assertion that it does disregards the clear and express language of the Statute.  (Opp'n 19:21-23:20.)  In addition to relying upon NRS 107.080, Plaintiff is also forced to argue that pursuant to NRS 111.320, Plaintiff claims that any party who has

recorded a deed of trust would be deemed to have given an HOA notice of its lien, and therefore satisfied the request for notice requirement under the Statute.  (*Id*.)

As a preliminary matter, this argument is an admission by Plaintiff that the Statute requires affirmative conduct by Wells Fargo in order to receive notice.  Second, the express language of NRS 116.3116 *et seq*. *directly* contradicts this interpretation.  NRS 116.31163(2) states that a "holder of a recorded security interest" is entitled to notice if it has "notified the association, 30 days before the recordation of the notice of default, of the existence of the security interest . . ."  NRS 116.311635 states that a "holder of a recorded security interest" is entitled to notice of the time and place for the sale,  if it "has notified the association, before the mailing of the notice of sale, of the existence of the security interest . . ."  These provisions acknowledge that even where a security interest has been previously recorded, additional conduct is still required by the "holder of a recorded security interest" for notice to be required under the Statute.  To achieve Plaintiff's proffered construction, the legislature could have simply provided that any person with a "recorded security interest" must be given the applicable notices.  It did not.  Instead, the Statute requires "holders of a recorded security interest" to take additional affirmative steps - "opting-in" to the notice requirements of NRS 116.3116 *et seq*.  This is insufficient as a matter of constitutional law.

Moreover, reading the statutes as Plaintiff suggests would render the notice requirements of NRS 116.31163 and NRS 116.31165 superfluous.  Such a construction is impermissible.  *Dole Food Co. v. Patrickson*, 538 U.S. 468, 476-77 (2003) ("Absent a statutory test or structure that requires us to depart from normal rules of construction, we should not construe the statute in a manner that is strained and, at the same time, would render a statutory term superfluous."); *Harris Assocs. v. Clark County Sch. Dist.*, 119 Nev. 638, 641-42, 81 P.3d 532, 534-35 (2003) ("no part of a statute should be rendered meaningless").  In short, the Statute requires affirmative action by the "holder of a recorded security interest" - separate and apart from the recording of that interest - for notice to be mandatory.  Accordingly, Plaintiff's statutory construction is untenable under the plain language of the Statute, Nevada's rules of statutory construction, and does not cure the constitutional defects of the Statute.

Snell & Wilmer
L.L.P.
LAW OFFICES
1883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

4.  <u>The Nevada Supreme Court was not presented with a facial challenge to the Constitution and did not resolve that issue.</u>

Plaintiff further asserts that the Supreme Court in *SFR v. U.S. Bank* could have (but did not) address various constitutional challenges to the Statute.  (Opp'n 25:20-22.)  Plaintiff declares the Supreme Court's silence in not addressing constitutional issues that were not procedurally before the Court, as an affirmative finding that any subsequent constitutional challenge lacks merit.  (*Id.*)  Plaintiff's assertion contradicts the law regarding what can and cannot be determined on appeal.  The Supreme Court did not address, and indeed could not address, Wells Fargo's facial constitutional challenge because it was never presented to the Court in that case.  For the Court to decide an issue not raised by the parties below contravenes express precepts of judicial review.  *See Schuck v. Signature Flight Support of Nevada, Inc.*, 126 Nev. Adv. Op. 42, 245 P.3d 542, 544 (Nev. 2010) (stating that an appellate court will not hear arguments raised for the first time on appeal on the grounds that doing otherwise would jeopardize the efficiency, fairness, and integrity of the judicial system).  Accordingly, Plaintiff's suggestion that the Supreme Court somehow rejected the present facial challenge to the Statute because the Court chose not to voluntarily opine on an issue not before it fails as a matter of law.

**D.  <u>The HOA Foreclosure Price Was Commercially Unreasonable as a Matter of Law.</u>**

Plaintiff's failure to buy the property in a commercially reasonable manner voids the HOA foreclosure sale and requires dismissal as a matter of law.  Yet, Plaintiff attempts to overlook the fact that the property was purchased after it reverted to the HOA for $4,200.00, when it is valued at approximately 41 times that amount.

The Supreme Court's decision in *SFR v. U.S. Bank* expressly left the issue of "commercial reasonableness" and the related issue of "*bona fide* purchaser status" open.  *SFR Investments Pool 1 v. U.S. Bank,* 130 Nev. Adv. Op. 75, 334 P.3d 408, n.6 (2014), *reh'g denied* (Oct. 16, 2014).  Although the Nevada Supreme Court declined to consider issues of commercial reasonableness on a motion to dismiss, it did not foreclose the possibility that in other cases, the issue could be

Snell & Wilmer

L.L.P.
LAW OFFICES
1883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

ruled upon as a matter of law because the Court has discretion to take judicial notice of the Property's estimated value.[6]

    1.  <u>Contrary to Plaintiff's contention, proof of fraud is not a requirement to establishing a commercially unreasonable sale.</u>

In *Golden*, the Supreme Court held only that "proof of some element of fraud, unfairness *or* oppression as accounts for and brings about the inadequacy of price" will support setting aside a commercially unreasonable sale. *Golden v. Tomiyasu*, 79 Nev. 503, 387 P.2d 989 (1963) (emphasis added). The requirement to present "some element of fraud, unfairness or oppression" suggests a sliding scale for a court to weigh and balance on a continuum, considering all of the surrounding facts and circumstances.

Indeed, it is inherently unfair and oppressive that millions of dollars of secured interests can be wiped out to satisfy *de minimis* HOA liens, which results in Nevada citizens unable to buy, sell, or refinance properties and/or substantial increases in the costs of obtaining a home loan, among other dangerous effects. These consequences are unfair and oppressive to Nevada's citizens, its real estate market, and the industries which rely upon and service the real estate market.

Moreover, in weighing the totality of circumstances, the Nevada Supreme Court has found that:

> To say that a mortgagee with power to sell, who has an encumbrance on the estate of less than one-third of its value – an encumbrance which five or six months' rent will discharge – has the right to sell the estate absolutely to the first man he meets who will pay the amount of encumbrance, without any attempt to get a

---

[6] A fact is subject to judicial notice if it is "(a) Generally known within the territorial jurisdiction of the trial court; or (b) Capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, so that the fact is not subject to reasonable dispute." NRS 47.130(2). Courts can take judicial notice of matters of public record. *United States v. 14.02 Acres of Land*, 547 F.3d 943, 955 (9th Cir. 2008) (the court "may take judicial notice of matters of public record") (citations and internal quotation marks omitted); *Valasquez v. Mortgage Elec. Registration Sys., Inc.*, No. C 08-3818 PJH, 2008 WL 4938162, at *2–*3 (N.D. Cal. Nov. 17, 2008) (taking judicial notice of: (1) deed of trust, (2) assignment of deed of trust, (3) notice of default and election to sell under deed of trust, (4) substitution of trustee, and (5) rescission of notice of default because they were publicly recorded). Here, the documents evidencing a commercially unreasonable sale (attached to Wells Fargo's RJN) were recorded with the Clark County Recorder's office or come directly from the Clark County Assessor's records and, therefore, are matters of public record. The authenticity of such records may be readily and accurately determined, and are therefore appropriate for judicial notice at the motion to dismiss stage.

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

> larger price for it, *would in our opinion be equivalent to saying fraud and oppression shall be protected and encouraged.*

*Golden v. Tomiyasu*, 79 Nev. 503, 513, 387 P.2d 989 (1963) (emphasis added) (quoting *Runkle v. Gaylord*, 1 Nev. 123, 129 (1865). The Supreme Court has already determined that attempting to sell a property for less than one-third of its value without any attempt to get a higher price is equivalent to fraud. Yet that is exactly the practice at issue here – selling an entire home for the price of a very used car, typically well below even one-third of the value deemed fraudulent in *Runkle*. Accordingly, this conduct, regardless any further evidence, is tantamount to fraud, unfairness and oppression, and sufficient to set aside the sale.

The United States District Court for the District of Nevada has found that even if the foreclosure sale had extinguished the lender's deed of trust (which contention it rejected), the lender still would have standing to challenge the foreclosure sale as commercially unreasonable, stating that the sale of a property for $10,000 "raises serious doubts as to commercial reasonableness."[7] *Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC,* 962 F. Supp. 2d 1222, 1229 (D. Nev. 2013), *reconsideration denied,* No. 2:13-CV-00164-RCJ-NJK, 2013 WL 3943915 (D. Nev. July 30, 2013).

Additionally, the Eighth Judicial District has repeatedly dismissed quiet title cases involving HOA foreclosure sales on the independent basis that such sales were not commercially reasonable. In *SFR Investments Pool 1, LLC v. Nationstar Mortgage, LLC,* the Court found that a $7,000 purchase price was one factor the court considered in in determining that the plaintiff buyer was not a bona fide purchaser, because the plaintiff did not provide valuable consideration for the property. *SFR Investments Pool 1, LLC v. Nationstar Mortgage, LLC,* Order Denying Application for Temporary Restraining Order n. 9, Case No. A-13-684596-C, Dept. XXXI, entered on August 5, 2013; *see also Design 3.2 LLC v. Bank of New York Mellon,* Case No. A-10-

---

[7]Courts from other jurisdictions have reached a similar conclusion. The Vermont Supreme Court recently addressed this issue in the context of its own HOA super-priority statute (based on the Uniform Act). In its ruling, the Vermont court voided an HOA super-priority foreclosure sale holding that sale of the property for $3,510.10 was not commercially reasonable when the property had a fair market value of $70,000. *See Will v. Mill Condominium Owners' Ass'n*, 176 Vt. 380, 388-89, 848 A.2d 336 (Vt. 2004.) Specifically, the Vermont Supreme Court held that "the enforcement mechanisms provided for in [the Uniform Act] must be conducted in good faith as defined in § 1– 113, that is, *in a commercially reasonable manner.*" *Will v. Mill Condominium Owners' Ass'n*, 176 Vt. 380, 388, 848 A.2d 336 (Vt. 2004.)

Snell & Wilmer

L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

Snell & Wilmer
L.L.P.
LAW OFFICES
1883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

621628, Dept. XV, "*Design 3.2* Order", entered on June 15, 2011) (finding that the purchaser at the HOA foreclosure sale was not a bona fide purchaser, in part because plaintiff purchased for only $3,743.84 and the deed of trust was $576,000.)  Courts from other jurisdictions have reached this same conclusion.  *See Will v. Mill Condominium Owners' Ass'n*, 176 Vt. 380, 388-89, 848 A.2d 336 (Vt. 2004) (voiding an HOA super-priority foreclosure sale, holding that sale of the property for $3,510.10 was not commercially reasonable when the property had a fair market value of $70,000.)

> 2.   Plaintiff's Opposition fails to demonstrate that the sale was commercially reasonable.

In its Opposition, Plaintiff makes no attempt to explain how a property can sell for less than *three percent* of its fair market value and still be commercially reasonable.  Presumably, Plaintiff's purchase price is a direct reflection of what Plaintiff believed it purchased.  Plaintiff's purchase price, three percent of the fair market value, only demonstrates that Plaintiff and the HOA believed the property *was* subject to Wells Fargo's first-in-time deed of trust, not that it wasn't.  Plaintiff's other refrain – that Wells Fargo "did nothing" (Opp'n 31:1-3.) – is simply not true where, as established above, the Statute does not require proper notice.  There is no rational basis for allowing these commercially unreasonable sales to continue when there are alternative means of achieving the intended statutory purpose, without causing any harm to Nevada lenders or homeowners.  As ruled on by other Courts in this jurisdiction, and as expressly left open by the Nevada Supreme Court, the sale here was not commercially reasonable and is void as a matter of law.

The commercially unreasonable purchase price cannot be justified or excused on the sole assertion that Wells Fargo could have appeared at the sale.  First, the lender cannot protect itself against a foreclosure for which it has received no notice.  As detailed herein, the Statute does not require notice to the lender, and violates due process.  Second, even assuming Plaintiff's contention is true, this presumption ignores the HOA's practices of holding the property hostage until all amounts demanded are paid (well in excess of the super priority amount), refusing to communicate with the lender, or proceeding with foreclosure in the middle of payment

discussions with the lender.   Third, even assuming Plaintiff's contention is true, the purported fact that a lender may be able to protect itself, does not justify a sale for pennies on the dollar – it is a non sequitur.  Someone, sometime, under some set of hypothetical facts, could always stop a fraudulent transaction.   That possibility does nothing to render the underlying transaction legitimate.  The lender is not a party to these commercially unreasonable sales.  The Plaintiff and HOA are, and their terms are unreasonable on their face, and their sales void.

Further, Plaintiff cites to *Bourne Valley Court Trust v. Wells Fargo Bank, N.A.* presumably to argue that a property can be sold for less than 3 percent of its fair market value and still be commercially reasonable.  (Opp'n 15:11-16:21.)  First, Plaintiff's low purchase price only demonstrates that Plaintiff and the HOA believed the property *was* subject to Wells Fargo's first-in-time deed of trust, not that it wasn't.  Second, as discussed above, the price is not merely inadequate as Plaintiff suggests – there is an inherent unfairness in selling a property subject to a first deed of trust in such a manner, for the sole purpose of satisfying a de minimus lien without any attempt to obtain a larger amount and protect other purported junior lien holders.  *Bourne Valley Court Trust*, 2015 WL 301063, at *5.  Allowing a commercially reasonable sale to be defined by the legal climate at the time of the sale is subjecting the fair market value of these properties to "the roll of the dice," turning the real estate market on its head.  *Bourne Valley* permits a commercially unreasonable price solely because the purchaser might be gambling on an uncertain outcome in the courts.  *Bourne Valley*, No. 2:13-CV-00649-PMP, 2015 WL 301063, at *5. This is more a function of odds-making than a recognized element of commercial reasonableness and should be disregarded by this Court. *Bourne Valley's* interpretation untethers the sale from any fair market value considerations or analysis.  Indeed, there is no evidence that Plaintiff's low purchase price was necessarily a reflection of the uncertain legal climate, and the price was certainly not a fair indication of the property's actual worth.   Finally, *Bourne Valley's* acknowledgment that the plaintiffs here are "buying lawsuits" demonstrates that these plaintiffs cannot be bona fide purchasers, as they have knowledge of pre-existing encumbrances and lack good faith where this knowledge of a looming lawsuit necessary to determine title.

While not binding on this Court, it is persuasive that numerous other jurisdictions have set aside sales where the purchase price was grossly less than the value of the property.[8]  New Mexico's Supreme Court has held that a sales prices in the ten to forty percent of fair market value range "call[s] for special scrutiny by the court." *Armstrong v. Csurilla*, 817 P.2d 1221, 1235 (N.M. 1991).  Oklahoma has confirmed reversal of a sale is proper "when (1) the sale price is so grossly inadequate that it shocks the conscience of the court; (2) the sale price is grossly inadequate and the sale is tainted by additional circumstances; *or* (3) the result is inequitable to one or more of the parties before the court, whether owner, purchaser, or creditor." *United Oklahoma Bank v. Moss*, 793 P.2d 1359, 1364 (1990).  This is also consistent with the Restatement (Third) of Property (Mortgages), which the Nevada Supreme Court relied upon in *SFR v. U.S. Bank* and other cases.[9]  Section 8.3 with provides:

> (a)  A foreclosure sale obtained pursuant to a foreclosure proceeding that is otherwise regularly conducted in compliance with applicable law does not render the foreclosure sale defective unless the price is grossly inadequate.
> (b)  Subsection (a) applies to both power of sale and judicial foreclosure proceedings.

The sale in this case was grossly inadequate, making the HOA foreclosure sale defective.  Thus, this Court should determine that this sale, which was less than 3 percent of the value of the property, was commercially unreasonable and vacate the sale.

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

---

[8]  *Ballentyne v. Smith*, 205 U.S. 285, 291 (1907) (affirming the trial court's decision to set aside a sale where the actual value of the property was at least seven times the amount of the purchase price despite the absence of any fraudulent conduct); *First National Bank of York v. Critel*, 555 N.W.2d 773 (Neb. 1996) (reversing trial court's confirmation of a foreclosure because of the significant difference between the sale price and the property value listed on the tax assessment) ("Where the evidence establishes that the sale price was inadequate, it is the duty of the court to deny confirmation of the judicial sale."); *Crown Life Ins. Co. v. Candlewood, Ltd.*, 818 P.2d 411 (N.M. 1991) (setting aside the foreclosure sale and noting that the purchase price (less than 23 percent of the property value) should shock the conscience); *Rife v. Woolfolk*, 289 S.E.2d 220, 223 (W. Va. 1982) (setting aside a foreclosure sale where the purchase price was approximately one-seventh of the property value) ("There need be no showing of fraud, or any impropriety in the conduct of the sale, to set aside a sale where the price paid is so inadequate that it shocks the conscience. We hold that, under the circumstances of this case, the inadequacy of the purchase price shocks the conscience.").

[9]  *See, e.g.., American Sterling Bank v. Johnny Management LV, Inc.*, 435 P.3d 535, 537 (Nev. 2010); *Huston v. Bank of America Federal Sav. Bank*, 119 Nev. 485, 490, 491, 78 P.3d 71, 74 (2003).

**E.**  **Plaintiff Has No Answer to the Serious Public Policy Problems Presented by The Statute.**

Rather than addressing (much less rebutting) the serious public policy issues, Plaintiff claims the Supreme Court considered and rejected the public policy arguments because they were raised in amicus briefing in support of a petition for rehearing, which was denied.  Plaintiff's Opposition does not assert or demonstrate that Wells Fargo's public policy concerns are unjustified or unrealistic.  The public policy concerns identified in Wells Fargo's Motion to Dismiss address systemic overarching ramifications that will likely be experienced by Nevada's homeowners, potential buyers, its real estate market as a whole, and industries dependent upon the real estate market, such as residential construction and realtors.  Wells Fargo has already detailed the anticipated harm which will likely result as the effects of the *SFR v. U.S. Bank* opinion begin to trickle down through the economy.  Accordingly, these public policy issues must be considered and require dismissal.

**F.**  **Plaintiff Fails to Demonstrate that It Has Stated the Elements of an Unjust Enrichment Claim.**

Plaintiff's opposition to Wells Fargo's argument that Plaintiff has failed to state an unjust enrichment claim is just fifteen lines long and contains no legal citations.  Plaintiff does not dispute that if the Statute is deemed unconstitutional, its unjust enrichment claim necessarily fails. Instead, Plaintiff states only that the validity of its claim "is readily apparent."  Plaintiff does not address Wells Fargo's argument that the Complaint does not (1) identify any specific benefit conferred on Wells Fargo *by* Plaintiff; (2) allege that Wells Fargo appreciated the benefit; (3) Wells Fargo accepted the benefit; or (4) that Wells Fargo retained the benefit.  *Unionamerica Mtg. v. McDonald*, 97 Nev. 210, 212, 626 P.2d 606, 613 (1992) (noting that the essential elements of an unjust enrichment claim "are a benefit conferred on the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance and retention by the defendant of such benefit.").  Plaintiff's lack of opposition to these points should be construed as an admission that Wells Fargo's arguments have merit.

- 18 -

Even if, as Plaintiff appears to contend, the Wells Fargo foreclosure can be construed to have resulted in a benefit to Wells Fargo (which Wells Fargo denies), Plaintiff cannot allege that the benefit was conferred on Wells Fargo *by* Plaintiff. *Unionamerica*, 97 Nev. at 212. Indeed, the Complaint makes no such allegation. This is an essential element of the claim. *Id.* Plaintiff's unjust enrichment claim fails as a matter of law.

**G.   Plaintiff Fails to Salvage its Equitable Mortgage Claim.**

Plaintiff's opposition essentially admits that its equitable mortgage cause of action is improper and is not an equitable mortgage claim at all. (Opp'n 33:20-25.) Instead, Plaintiff suggests, without any authority whatsoever, that "any damages that are awarded to it should be secured by the Property under equitable grounds." (Opp'n 33:22-25) In this sense, Plaintiff is asking the Court to fashion an entirely new cause of action to create a lien on the Property despite the fact the parties never intended that any such security interest be created. *U.S. v. Agri Services, Inc.* 81 F.3d 1002, 1007 (10th Cir. 1996) ("The creation of an equitable mortgage … is determined by the parties' intent."). Plaintiff does not allege that the parties ever intended to create such a security interest on the Property. Plaintiff's equitable mortgage claim fails as a matter of law and must be dismissed.

**H.   Plaintiff's Slander of Title Claim Fails as a Matter of Law.**

Plaintiff's Opposition fails to address two important arguments raised by Wells Fargo, each of which is fatal to its slander of title claim. First, Plaintiff does not address, and therefore apparently admits, that there can be no slander of title in this case if the Statute is deemed unconstitutional. Plaintiff's assertion that its factual allegations must be accepted as true does not salvage a Statute that is unconstitutional on its face.

Second, Plaintiff's Opposition does not address the malice requirement for a slander of title claim. Indeed, Plaintiff ignores Nevada case law directly on point on this issue, which holds that "[s]lander of title requires the showing of false and *malicious* communications." *Nimble Inv., LLC v. SauLan Woo*, 124 Nev. 1496, 238 P.3d 842 (2008) (emphasis added). The Nevada Supreme Court has held that "[t]here is no malice when a defendant has reasonable grounds for belief in his claim, even if the claim proves to be false." *Id.* It is undisputed that prior to the *SFR*

*v. U.S. Bank* decision, there was at the very least a split of opinion as to whether an HOA foreclosure of a super-priority lien extinguished a first deed of trust.  Indeed, this is demonstrated in this very case, as Plaintiff apparently accepted that Wells Fargo's Deed of Trust survived the HOA foreclosure and that Wells Fargo's subsequent foreclosure was valid for nearly three years. It was not until after the *SFR v. U.S. Bank* opinion was issued that Plaintiff filed suit to quiet title to the Property.

Wells Fargo had (and still has) a reasonable belief that its deed of trust survived the HOA foreclosure in this case.  Thus, there can be no malice Wells Fargo's recording of its foreclosure documents here, and Plaintiff's slander of title claim fails as a matter of law.

## I.  **Plaintiff's Conversion Claim Fails because it Is Based on Real Property.**

Plaintiff's Opposition unsuccessfully attempts to reframe its conversion claim as one based not on the sale of the Property, but instead Wells Fargo's on acceptance of the proceeds from its foreclosure sale.  (Opp'n 34:21-27.)  However, this transparent attempt cannot overcome the actual allegations made in the Complaint, which are what the Court must look to in deciding Wells Fargo's Motion.

In Nevada, "[c]onversion is a distinct act of dominion wrongfully exerted over another's personal property in denial of, or inconsistent with his title or rights therein or in derogation, exclusion or defiance of such title or rights."  *Evans v. Dean Witter Reynolds, Inc.,* 116 Nev. 598, 606, 5 P.3d 1043, 1048 (2000) (internal quotations omitted).  Plaintiff's Complaint references this "act of dominion" standard solely in regard to the *Property* at issue, not the proceeds from the sale as it now contends.  Specifically, its Complaint alleges that "Defendants exercised dominion and control over the property of Plaintiff to the exclusion of Plaintiff's rights in said property…" (Compl. ¶ 119.)

There are no other allegations in the Complaint which allege that Wells Fargo or any other defendant exercised "dominion" over any personal property, money or otherwise.  For Plaintiff to now claim that its conversion claim is centered on the proceeds from the sale, and not the Property itself, is disingenuous and directly contradicts the Complaint itself.   Plaintiff's

conversion claim fails as a matter of law because real property cannot be the subject of a conversion claim.

**J.    Plaintiff Fails to Salvage its Rescission Claim.**

Plaintiff's Opposition does not adequately address the flaws in its rescission claim and fails to demonstrate that it is a valid cause of action.   As set out in Wells Fargo's motion, rescission is an equitable remedy, not an independent cause of action.  *Awada v. Shuffle Master, Inc*. 123 Nev. 613, 623, 173 P.3d 707, 173 (2007) ("Rescission is an equitable remedy.")   As such, rescission cannot form a distinct claim for relief.  Plaintiff's Opposition makes no attempt to dispute this fact and provides no authority to the contrary.

Additionally, Plaintiff makes no attempt to explain that it waited an unreasonable amount of time (four full years) to seek to rescind the foreclosure. Nevada case law requires that "[r]escission must be sought promptly after discovering facts that entitle the defrauded party to rescind." *Butwinick v. Hepner*, 2014 WL 3784111, *2 (Nev. July 30, 2014), *citing Gannett Co., Inc. v. Register Pub. Co.*, 428 F.Supp. 818, 824 (D.Conn. 1977).  Plaintiff cannot, and does not, contend that it sought rescission within a reasonable time. This alone is fatal to its rescission claim.

Finally, Plaintiff admits that its rescission claim is duplicative of its quiet title claim. (Opp'n 35:8-11.)  In reality, it is also duplicative of both its quiet title and wrongful foreclosure claims.  Plaintiff notes that the rescission claim "seeks to cancel the Bank Foreclosure Sale." (Opp'n 35:8.)  In other words, the rescission claim relies on the same theory and allegations as Plaintiff's quiet title and wrongful foreclosure claims to assert that Wells Fargo's Deed of Trust was void and thus its foreclosure sale invalid.  These duplicative claims may be styled differently, but in essence they seek the same relief under the same theory of recovery.  The recession claim must be dismissed.

///

///

///

///

**III.     CONCLUSION**

For the reasons set forth herein and the moving brief, Wells Fargo's Motion to Dismiss should be granted.

Dated: November 2, 2015.                    SNELL & WILMER L.L.P.


By:   */s/ Robin E. Perkins*
Richard C. Gordon, Esq.
Robin E. Perkins, Esq.
Justin A. Shiroff, Esq.
3883 Howard Hughes Parkway
Suite 1100
Las Vegas, Nevada 89169
*Attorneys for Defendant Wells Fargo Bank, N.A.*

## CERTIFICATE OF SERVICE

As an employee of Snell & Wilmer L.L.P., I certify that I served a copy of the foregoing Defendants Wells Fargo Bank, N.A.'S Reply in Support of Motion to Dismiss on the 2nd day of November, 2015 by the method indicated:

☐ **BY FAX:** by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m. pursuant to EDCR Rule 7.26(a). A printed transmission record is attached to the file copy of this document(s).

☒ **BY U.S. MAIL:** by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Las Vegas, Nevada addressed as set forth below.

☐ **BY OVERNIGHT MAIL:** by causing document(s) to be picked up by an overnight delivery service company for delivery to the addressee(s) on the next business day.

☐ **BY PERSONAL DELIVERY:** by causing personal delivery by _____, a messenger service with which this firm maintains an account, of the document(s) listed above to the person(s) at the address(es) set forth below.

☒ **BY ELECTRONIC SUBMISSION:** submitted to the above-entitled Court for electronic filing and service upon the Court's Service List for the above-referenced case.

☐ **BY EMAIL:** by emailing a PDF of the document listed above to the email addresses of the individual(s) listed below.

Roger P. Croteau, Esq.
Timothy E. Rhoda, Esq.
Roger P. Croteau & Associates, Ltd.
9120 West Post Road, Suite 100
Las Vegas, NV 89148
*Attorneys for Plaintiff*
*(via Electronic Filing)*

Gregory Wilde, Esq.
Tiffany & Bosco, P.A.
212 South Jones Boulevard
Las Vegas, NV 89107
*Attorneys for Defendant National Default Servicing Corporation*
*(via Electronic Filing)*

Office of the Attorney General
Attn: Gina Long
555 E. Washington Avenue
Suite 3900
Las Vegas, NV 89101
*(via U.S. Mail)*

*/s/ Maricris Williams*
An employee of Snell & Wilmer L.L.P.

22408461