# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| LAS VEGAS DEVELOPMENT GROUP, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SHIRLEY C. YFANTIS, *et al.*,<br><br>Defendants. | Case No. 2:15-cv-01127-APG-CWH<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT WELLS FARGO'S MOTION TO DISMISS**<br><br>(Dkt. #13) |

This is a dispute over property located at 9986 Otterburn Street in Las Vegas.  The former owners purchased the property with a loan insured by the Federal Housing Authority ("FHA") and secured by a first deed of trust encumbering the property.  The property is located in a common-interest community and subject to assessments due to the homeowners association ("HOA").  When the former owners failed to pay the HOA assessments, the HOA foreclosed.  Plaintiff Las Vegas Development Group, LLC ("LVDG") purchased the property at the HOA nonjudicial foreclosure sale.

After the HOA foreclosure sale, the first deed of trust holder, defendant Wells Fargo Bank, N.A., foreclosed on the property because the original owners failed to make mortgage payments.  Wells Fargo purchased the property at the foreclosure sale and then transferred it to the Department of Housing and Urban Development ("HUD").  HUD later transferred the property to defendants Shirley Yfantis and Crystalia Yfantis.

LVDG brought suit to quiet title to the property, claiming it has superior title through the HOA foreclosure sale.  LVDG contends that under *SFR Investments Pool 1, LLC v. U.S. Bank, N.A.*, 334 P.3d 408 (Nev. 2014) (en banc), the HOA foreclosure sale extinguished the first deed of trust.  LVDG argues the subsequent foreclosure sale by Wells Fargo is therefore void, as are the downstream transfers from Wells Fargo to HUD and from HUD to Shirley and Crystalia Yfantis.

1    Wells Fargo moves to dismiss LVDG's quiet title claim, arguing that the HOA foreclosure

2    sale must be set aside because allowing that sale to extinguish an FHA-insured loan would violate

3    the Property and Supremacy Clauses of the Constitution.  Wells Fargo argues that Nevada

4    Revised Statutes ("NRS") Chapter 116 violates due process because it does not require the HOA

5    to provide notice to a first deed of trust holder prior to foreclosing and extinguishing the first deed

6    of trust.  Wells Fargo also contends the quiet title claim should be dismissed because the HOA

7    foreclosure sale was not commercially reasonable.  In addition, Wells Fargo moves to dismiss

8    LVDG's claims for wrongful foreclosure, unjust enrichment, equitable mortgage, slander of title,

9    conversion, and equitable conversion on various grounds.  Defendants National Default Servicing

10   Corporation, Shirley Yfantis, Crystalia Yfantis, and Evergreen Moneysource Mortgage Company

11   join the motion to dismiss. (Dkt. #16; Dkt. #17.)

12   I deny the motion to dismiss with respect to the quiet title claim because the Property,

13   Supremacy, and Due Process Clauses do not render the HOA sale void.  Additionally,

14   commercial unreasonableness does not support dismissal.  I dismiss the wrongful foreclosure and

15   rescission claims as redundant of the quiet title claim.  I grant in part the motion to dismiss the

16   unjust enrichment claim.  I dismiss the equitable mortgage claim because there is no basis to

17   impose an equitable mortgage.   I deny the motion to dismiss the slander of title claim because it

18   is adequately pleaded.  I dismiss the conversion claim as time-barred.  Finally, I deny the motion

19   to dismiss based on policy grounds.

20   **I. ANALYSIS**

21   In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken

22   as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'ship v.*

23   *Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  However, I do not necessarily

24   assume the truth of legal conclusions merely because they are cast in the form of factual

25   allegations in the plaintiff's complaint. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-

26   55 (9th Cir. 1994).  A plaintiff must make sufficient factual allegations to establish a plausible

27   entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  Such allegations

28

1  must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a

2  cause of action." *Id.* at 555.

3  **A. Quiet Title**

4  Count one of LVDG's complaint seeks to quiet title in LVDG against all defendants. (Dkt.

5  #1-1 at 11.) Wells Fargo moves to dismiss this claim, arguing that the HOA sale is void under the

6  Property, Supremacy, and Due Process Clauses. Wells Fargo also argues the claim should be

7  dismissed because the HOA sale was commercially unreasonable.

8  1. Property Clause

9  Wells Fargo, the Yfantis Defendants, National Default Servicing, and Evergreen lack

10  prudential standing to assert the federal government's interests under the Property Clause.

11  *Freedom Mortg. Corp. v. Las Vegas Dev. Grp., LLC*, 106 F. Supp. 3d 1174, 1180 (D. Nev. 2015).

12  HUD "is the best advocate of its *own* interests." *Id.* (quoting *The Wilderness Soc'y v. Kane Cnty.,*

13  *Utah*, 632 F.3d 1162, 1172 (10th Cir. 2011)) (emphasis in original). HUD was a defendant in this

14  action and disclaimed any interest in the property while retaining its rights against other parties to

15  this litigation. (Dkt. #57.)

16  A lack of standing generally ends the analysis, but some courts have suggested that

17  "[q]uestions relating to prudential standing . . . may be pretermitted in favor of a straightforward

18  disposition on the merits." *Grubbs v. Bailes*, 445 F.3d 1275, 1281 (10th Cir. 2006) (emphasis

19  omitted); *but see Newdow v. Rio Linda Union Sch. Dist.*, 597 F.3d 1007, 1041 n.36 (9th Cir.

20  2010) (acknowledging that some courts have reached the merits without resolving prudential

21  standing, but stating that "no court has ever bypassed a prudential standing question to rule in

22  favor of the party lacking prudential standing, but attempting to invoke the court's subject matter

23  jurisdiction as to the merits") (emphasis omitted).

24  Even if I addressed the merits without deciding the prudential standing question, I would

25  reject Wells Fargo's Property Clause argument. HUD's status at the time of the foreclosure sale

26  was as an insurer of a mortgage, which "is far too attenuated to reasonably consider the HOA's

27  foreclosure as disposing of '[p]roperty belong[ing] to the United States' in contravention of the

28

1    Property Clause." *Freedom Mortg. Corp.*, 106 F. Supp. 3d at 1182 (quoting U.S. Const. art. IV,

2    § 3, cl. 2.)  Unlike in *Freedom Mortgage*, here Wells Fargo later transferred the mortgage to

3    HUD.  Nevertheless, it is undisputed that at the time of the HOA sale, HUD was only an insurer

4    and did not own the property or the first deed of trust.  HUD may have remedies against Wells

5    Fargo based on applicable statutes and regulations if Wells Fargo did not transfer good,

6    marketable title to HUD. *See, e.g.*, 24 C.F.R. §§ 203.363(b), 203.366.  But that transfer took place

7    after the HOA foreclosure sale and could not retroactively convert HUD's status as an insurer into

8    a federal property interest under the Property Clause.

9         To the extent HUD had some contingent interest in the property prior to the HOA

10   foreclosure sale, the HOA foreclosure sale did not extinguish that interest in contravention of

11   federal rights under the Property Clause.  Rather, HUD long ago decided that any interest it

12   would have in the property through its loan insurance program would be conditioned on the

13   insured lender delivering good, marketable title. *See id.*; *see also* 12 U.S.C. § 1710(a)(1)(B)

14   (authorizing the Secretary to pay mortgage insurance upon the "prompt conveyance to the

15   Secretary of title to the property which meets the standards of the Secretary . . .").  HUD

16   anticipated that HOA foreclosures of superpriority liens may affect whether a lender could meet

17   that condition, and it warned its lenders to ensure that they maintained good, marketable title by

18   paying off superpriority liens. *See Freedom Mortg.*, 106 F. Supp. 3d at 1184-85 & nn.51 & 56

19   (citing HUD Mortgagee Letters 2013-08, 2002-19, 2012-11, & 2012-14).  Thus, allowing an

20   HOA superpriority foreclosure sale to extinguish the first deed of trust securing an FHA-insured

21   loan does not contravene federal decisions about the disposition of HUD's interest (to the extent

22   one existed) because HUD decided to (1) condition its payment of mortgage insurance on the

23   lender transferring good, marketable title and (2) place the burden of maintaining good,

24   marketable title on its insured lenders.  The HOA foreclosure sale merely prevented the

25   contingency through which HUD's interest could ripen based on a condition that HUD itself

26   imposed and a result that HUD anticipated and warned its insured lenders against.  Therefore, to

27   the extent that foreclosure of an HOA superpriority lien extinguishes a HUD contingent interest

28

in the property, it does so because the lender did not satisfy the pre-conditions HUD put in place

regarding how HUD manages its loan insurance program.  Accordingly, I deny the motion to

dismiss based on the Property Clause.

### 2. Supremacy Clause

There is no conflict preemption under the Supremacy Clause.  A state law may be conflict

preempted (1) "where it is impossible for a private party to comply with both state and federal

law" or (2) "where the challenged state law stands as an obstacle to the accomplishment and

execution of the full purposes and objectives of Congress." *Valle del Sol Inc. v. Whiting*, 732 F.3d

1006, 1023 (9th Cir. 2013) (quotation omitted).  As explained more fully in *Freedom Mortgage*,

"[n]either circumstance exists here because the lender controls its ability to comply with both

state law and the federal program, and because Nevada's superpriority law for HOA-assessment

foreclosures is no obstacle to the purpose and objective of HUD's program." *Freedom Mortg.*,

106 F. Supp. 3d at 1183.  Wells Fargo could have paid off the superpriority lien amount and

preserved its deed of trust lien, but chose not to.

### 3. Due Process

Wells Fargo argues that NRS Chapter 116 is facially unconstitutional because it does not

require the HOA to provide notice of the nonjudicial foreclosure of the superpriority lien to the

first deed of trust holders.  Rather, Wells Fargo contends, the statute creates an opt-in process

through which first deed of trust holders must request the HOA to send them notice of the

impending foreclosure.

LVDG responds that the statutory scheme requires notice to the lender because it

incorporates NRS § 107.090, which requires notice to junior lienholders of record.  LVDG also

argues the Supreme Court of Nevada has ruled in *SFR* that (1) the statutory scheme requires

notice to the first deed of trust holders and (2) the statute does not violate due process.  LVDG

further contends that even if the original *SFR* opinion did not resolve this issue, the Supreme

Court of Nevada denied rehearing in *SFR* and, in doing so, rejected amicus curiae briefs that

1    raised this issue.  LVDG also asserts that the due process challenge fails because there is no state

2    actor involved in an HOA nonjudicial foreclosure sale.

3         "The constitutionality of a state statute is a question of law." *Planned Parenthood of*

4    *Idaho, Inc. v. Wasden*, 376 F.3d 908, 920 (9th Cir. 2004).  To prevail on a facial challenge to a

5    state statute, "the challenger [must] establish that no set of circumstances exists under which the

6    [statute] would be valid." *Id.* (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

7         "[I]t is solely within the province of the state courts to authoritatively construe state

8    legislation." *Cal. Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1146 (9th Cir. 2001).  If

9    the state court has not construed the relevant statute, then I must interpret the statute as the

10   Supreme Court of Nevada would and follow Nevada's rules of statutory construction. *Planned*

11   *Parenthood of Idaho, Inc.*, 376 F.3d at 925.  If the challenged statute's "plain language does not

12   conclusively determine the statute's meaning, [I] must presume that the [Nevada] legislature both

13   intended to and did in fact act constitutionally, . . . and indulge in any reasonable construction that

14   can save the statute from invalidity." *Id.* (internal citations omitted).  However, I may not "rewrite

15   the statute to save it." *Id.* (quotation omitted).  Additionally, any saving construction I adopt

16   "must be a reasonable and readily apparent gloss on the language." *Id.* (quotation omitted).

17        Under Nevada rules of statutory construction, statutes are presumptively constitutional.

18   *State v. Castaneda*, 245 P.3d 550, 552 (Nev. 2010) (en banc).  "[T]he party challenging a statute

19   has the burden of making a clear showing of invalidity." *Id.* (quotation omitted).  Additionally,

20   Nevada "adhere[s] to the precedent that every reasonable construction must be resorted to, in

21   order to save a statute from unconstitutionality." *Id.* (quotation omitted); *see also Ford v. State*,

22   262 P.3d 1123, 1130 (Nev. 2011) (en banc) ("[W]hen the language of a statute admits of two

23   constructions, one of which would render it constitutional and valid and the other unconstitutional

24   and void, that construction should be adopted which will save the statute.") (quotation omitted).

25        "When the words of the statute have a definite and ordinary meaning, [the Supreme Court

26   of Nevada] will not look beyond the plain language of the statute, unless it is clear that this

27   meaning was not intended." *Harris Assocs. v. Clark Cnty. Sch. Dist.*, 81 P.3d 532, 534 (Nev.

28

1    2003) (en banc) (quotation omitted).  But if a statute is ambiguous, then "the drafter's intent

2    becomes the controlling factor in statutory construction." *Id.* (quotation omitted).  "An ambiguous

3    statutory provision should also be interpreted in accordance with what reason and public policy

4    would indicate the legislature intended." *Id.* (quotation omitted).  Statutes should be construed in

5    a way that "give[s] meaning to all of their parts and language . . . within the context of the

6    purpose of the legislation." *Id.* (quotation omitted).  Finally, a statute "should not be read to

7    produce absurd or unreasonable results." *Id.* (quotation omitted).

8            At the time of the HOA foreclosure sale in November 2011, the relevant statutes provided

9    "specific timing and notice requirements." *SFR Inv. Pool 1*, 334 P.3d at 411.  The process went

10   like this: first, the HOA must provide the homeowner with a notice of delinquent assessments.

11   Nev. Rev. Stat. § 116.31162(1)(a).  If the homeowner does not cure the default, the HOA then

12   must provide the homeowner with a notice of default and election to sell. *Id.* §§ 116.31162(1)(b),

13   (3)(b).  The HOA also must provide the notice of default and election to sell to "[e]ach person

14   who has requested notice pursuant to NRS 107.090 or 116.31168" and "[a]ny holder of a

15   recorded security interest encumbering the unit's owner's interest who has notified the

16   association, 30 days before the recordation of the notice of default, of the existence of the security

17   interest." *Id.* §§ 116.31163(1), (2).

18          The HOA must give the homeowner at least 90 days to pay off the lien. *Id.*

19   § 116.31162(1)(c).  "If the lien is not paid off, then the HOA may proceed to foreclosure sale."

20   *SFR Inv. Pool 1*, 334 P.3d at 411 (citing Nev. Rev. Stat. § 116.31162).  "Before doing so, the

21   HOA must give notice of the sale to the owner and to the holder of a recorded security interest if

22   the security interest holder 'has notified the association, before the mailing of the notice of sale of

23   the existence of the security interest.'" *Id.* (citing §§ 116.311635(1)(b)(2), 107.090(3)(b), (4)).

24          But Chapter 116 is not the only chapter of the Nevada Revised Statutes to impose notice

25   requirements on foreclosing HOAs.  "'The provisions of NRS 107.090,' governing notice to

26   junior lienholders and others in deed-of-trust foreclosure sales, 'apply to the foreclosure of an

27   association's lien as if a deed of trust were being foreclosed.'" *Id.* (quoting Nev. Rev. Stat.

28

1    § 116.31168(1)).  Section 107.090(3) requires the HOA to provide the notice of default to "(a)

2    [e]ach person who has recorded a request for a copy of the notice; and (b) [e]ach other person

3    with an interest whose interest or claimed interest is subordinate to the deed of trust."  The HOA

4    also must provide the notice of sale to the same persons. Nev. Rev. Stat. § 107.090(4).  Section

5    107.090(1) defines a "person with an interest" to mean:

6            any person who has or claims any right, title or interest in, or lien or charge upon,
             the real property described in the deed of trust, as evidenced by any document or
7            instrument recorded in the office of the county recorder of the county in which any
             part of the real property is situated.

8

9    Under § 107.090(2),

10           A person with an interest or any other person who is or may be held liable for any
             debt secured by a lien on the property desiring a copy of a notice of default or
11           notice of sale under a deed of trust with power of sale upon real property may at
             any time after recordation of the deed of trust record in the office of the county
12           recorder of the county in which any part of the real property is situated an
             acknowledged request for a copy of the notice of default or of sale.

13

14           The Supreme Court of Nevada has construed this statutory scheme to require notice to the

15   first deed of trust holder.  In *SFR*, the court reviewed a complaint's sufficiency at the dismissal

16   stage and rejected a due process challenge. 334 P.3d at 417-18.  The *SFR* complaint alleged that

17   "the HOA foreclosure sale complied with all requirements of law, including but not limited to,

18   recording and mailing of copies of Notice of Delinquent Assessment and Notice of Default, and

19   the recording, posting and publication of the Notice of Sale." *Id.*  Based on these allegations, the

20   court ruled that "[i]n view of the fact that the 'requirements of law' include compliance with NRS

21   116.31162 through NRS 116.31168 and by incorporation, NRS 107.090, *see* NRS 116.31168(1),

22   we conclude that U.S. Bank's due process challenge to the lack of adequate notice fails, at least at

23   this early stage in the proceeding." *Id.*  The court also stated that "[o]n this record, at the

24   pleadings stage, we credit the allegations of the complaint that SFR provided all statutorily

25   required notices as true and sufficient to withstand a motion to dismiss." *Id.* at 418.  In other

26   words, because the statutory scheme requires notice to the first deed of trust holder through

27

28

1    § 116.31168's incorporation of § 107.090, the complaint's statement that all requirements of law

2    were satisfied adequately alleged that the HOA gave notice to the first deed of trust holder.[1]

3            The dissenting Justices in *SFR* agreed with this portion of the majority's analysis:

4            As the majority points out, by incorporating certain notice provisions from Chapter
     107, Chapter 116 appears to mandate that the association mail the notice of default
5            and notice of sale to the first security holders who have recorded their security
     interest when the association is foreclosing on its lien. NRS 116.31168(1); NRS
6            107.090.

7    *Id.* at 422 (Gibbons, C.J. concurring in part and dissenting in part). The dissenters identified a

8    different possible due process problem associated with what they viewed as inadequate

9    information contained within the notices. *Id.* ("But what the majority fails to adequately address

10   is that the association is not required to indicate in its notices that [the] superpriority portion of its

11   lien [is] being foreclosed on, let alone what the amount of the superpriority portion is . . . ."). But

12   both the majority and the dissenting opinions agreed the statutory scheme requires notice to the

13   first deed of trust holder, which is the issue in this case.

14           Moreover, the Supreme Court of Nevada subsequently denied rehearing in *SFR* and stated

15   that it had "considered the briefs of amici curiae in resolving the petition for rehearing." *SFR Inv.*

16   *Pool 1 v. U.S. Bank*, No. 63078, Order Denying Rehearing, 14-34519 at 2 n.1 (Nev. Oct. 16,

17   2014). One of those amicus briefs argued that the statutory scheme violated due process because

18   it did not mandate notices be sent to first deed of trust holder. *SFR Inv. Pool 1 v. U.S. Bank*, No.

19   63078, Amicus Brief in Support of the Respondent filed by United Trustees Association and

20   American Legal & Financial Network, 14-34536 at 3-4. The court thus considered and rejected

21   that argument.

22           It is solely within the province of the Supreme Court of Nevada to authoritatively construe

23   Chapter 116. It has construed the statute to require notice to first deed of trust holders who have

24   recorded their security interests. The statute therefore does not violate due process because it

25

26           [1] *SFR* did not indicate that the complaint alleged U.S. Bank had "opted in" to receive
27   notice and no such allegation appears in the complaint. *SFR Inv. Pool 1 v. U.S. Bank*, No.
     A673671, Complaint for Quiet Title and Injunctive Relief.

28

1  does not require the first deed of trust holder to "opt in" to receive notice as Wells Fargo argues.

2  I therefore deny Wells Fargo's motion to dismiss on the basis that the statute violates due process.

3         Even if I were at liberty to construe the statute independently of the Supreme Court of

4  Nevada's guidance in *SFR*, I would reach the same conclusion.  I begin with the presumption that

5  the statute is constitutional, and I must adopt any reasonable construction that can save the statute

6  from being invalidated.  When the HOA forecloses on its lien, § 116.3118(1) incorporates

7  § 107.090's provisions "as if a deed of trust were being foreclosed."  Sections 107.090(3)(b) and

8  107.090(4) require the HOA to provide the notice of default and the notice of sale to "[e]ach other

9  person with an interest whose interest or claimed interest is subordinate to the deed of trust."

10  Thus, notice must be provided to each other person whose interest or claimed interest is

11  subordinate to the HOA superpriority lien.  That includes the first deed of trust holder.

12         Wells Fargo contends this construction of the statute renders the "opt-in" provisions

13  meaningless and courts should strive to give every provision of a statute meaning.  However, the

14  opt-in provisions give an additional class of persons the right to opt in: "any other person who is

15  or may be held liable for any debt secured by a lien on the property." Nev. Rev. Stat.

16  § 107.090(2).  If anything, it is Wells Fargo's proposed interpretation that would render

17  § 116.3118(1)'s incorporation of § 107.090(3)(b) meaningless.  Section 107.090(3)(b) requires

18  notice to every person with an interest subordinate to the HOA superpriority lien.  Wells Fargo

19  contends this section does not save the statute because Wells Fargo's interest "is not subordinate

20  to the deed of trust—their interest *is* the deed of trust." (Dkt. #13 at 23.)  This interpretation

21  ignores § 116.3118's plain language that when the HOA forecloses, § 107.090 is incorporated "as

22  if a deed of trust is being foreclosed."  Moreover, Wells Fargo's reading of the statute would

23  create absurd results.  Under its proposed reading, every junior lienholder except the first deed of

24  trust holder would be entitled to notice.

25         In sum, I deny the motion to dismiss on due process grounds.  The Supreme Court of

26  Nevada has construed the statute to require notice to first deed of trust holders.  That

27

28

1   interpretation of the statute is conclusive.  Because the statute, properly interpreted, does not

2   require the first deed of trust holder to opt in to receive notice, there is no due process violation.

3                       4.  Commercial Reasonableness

4         Wells Fargo argues the HOA foreclosure sale was commercially unreasonable because the

5   property was sold for an inadequate price without any effort to obtain a fair market price.  LVDG

6   responds that this argument cannot support dismissal because issues of fact would remain

7   regarding the adequacy of the price and whether there was any fraud, unfairness, or oppression to

8   support setting aside the sale.  Additionally, LVDG argues that the disparity between the HOA

9   foreclosure sale price and the market value of the property was to be expected given the

10  uncertainties in the market prior to *SFR*.

11        The Supreme Court of Nevada recently clarified that under Nevada law, "courts retain the

12  power to grant equitable relief from a defective [HOA] foreclosure sale when appropriate . . . ."

13  *Shadow Wood Homeowners Ass'n, Inc. v. New York Cmty. Bancorp, Inc.*, No. 63180, --- P.3d ----

14  , 2016 WL 347979, at *5 (Nev. Jan. 28, 2016) (en banc).  Because LVDG seeks to quiet title in

15  itself, it bears the burden of demonstrating there are insufficient grounds to justify setting aside

16  the HOA foreclosure sale. *Id.* at *6 (stating "the burden of proof rests with the party seeking to

17  quiet title in its favor").  "[D]emonstrating that an association sold a property at its foreclosure

18  sale for an inadequate price is not enough to set aside that sale; there must also be a showing of

19  fraud, unfairness, or oppression." *Id.* (citing *Long v. Towne*, 639 P.2d 528, 530 (Nev. 1982)).  In

20  considering whether equity supports setting aside the sale, I also should consider any other factor

21  bearing on the equities, including the actions or inactions of the party that seeks to set aside the

22  sale and the impact on a bona fide purchaser for value. *Id.* at *8-9 (stating that "courts must

23  consider the entirety of the circumstances that bear upon the equities").

24        The complaint alleges that LVDG purchased the property at the HOA foreclosure sale on

25  November 17, 2010 and that all statutory requirements were satisfied. (Dkt. #1-1.)  Nothing on

26  the face of the complaint supports dismissal based on commercial unreasonableness.

27

28

1    Although LVDG ultimately will bear the burden of establishing commercial

2    reasonableness to quiet title in itself, Wells Fargo moves to dismiss the quiet title claim on the

3    basis that the HOA sale was commercially unreasonable.  Wells Fargo has not shown that, as a

4    matter of law, the price at the HOA foreclosure sale was inadequate such that dismissal is

5    appropriate on the grounds of commercial unreasonableness.  Wells Fargo presents the trustee's

6    deed upon sale that shows LVDG purchased the property in November 2010 for $4,200. (Dkt.

7    #15-8.)  The only evidence Wells Fargo presents on the property's value is the property's

8    assessed value in 2014-15 ($158,963) and 2015-16 ($171,123). (Dkt. #13-3.)  Even if I took

9    judicial notice of these documents at the dismissal stage, the property's assessed value in 2014-16

10   is not competent evidence of the property's fair market value in 2010, particularly considering the

11   practical realities of the Las Vegas real estate market generally in 2010.  "[C]ommercial

12   reasonableness . . . must be assessed as of the time the sale occurred." *Bourne Valley Court Trust*

13   *v. Wells Fargo Bank, N.A.*, 80 F. Supp. 3d 1131, 1136 (D. Nev. 2015).  Moreover, the HOA sale

14   in 2010 was pre-*SFR*.  As explained in *Bourne Valley*,

15       Before the Nevada Supreme Court issued *SFR Investments*, purchasing property at
         an HOA foreclosure sale was a risky investment, akin to purchasing a lawsuit.
16       Nevada state trial courts and decisions from the United States District Court for the
         District of Nevada were divided on the issue of whether HOA liens are true
17       priority liens such that their foreclosure extinguishes a first deed of trust on the
         property. *SFR Investments*, 334 P.3d at 412.  Thus, a purchaser at an HOA
18       foreclosure sale risked purchasing merely a possessory interest in the property
         subject to the first deed of trust. . . .  Given these risks, a large discrepancy
19       between the purchase price a buyer would be willing to pay and the assessed value
         of the property is to be expected.
20

21   *Id.*  Wells Fargo argues in its reply that the legal climate at the time of the HOA sale should not

22   affect a determination of the property's fair market value.  But Wells Fargo cites no law for the

23   illogical proposition that a potential cloud on the title would not affect a property's fair market

24   value.

25       Moreover, Wells Fargo has not pointed to any fraud, oppression, or unfairness in either

26   the complaint's allegations or the publicly recorded documents.  Wells Fargo argues that the

27   HOA sale is fraudulent and oppressive because the HOA sold the property well below the fair

28

market value "to the first speculator who will pay the lien amount, without making any effort to obtain a fair market price." (Dkt. #13 at 25-26.)  Wells Fargo relies on *Runkle v. Gaylord*, 1 Nev. 123 (1865) for this proposition.  However, in *Runkle*, the party enforcing a security interest sold the property by approaching only a single individual and requesting only the amount of the debt owed. 1 Nev. at 128-29.  Under these circumstances, the Supreme Court of Nevada stated:

> To say that a mortgagee with power to sell, who has an incumbrance on the estate of less than one-third of its value--an incumbrance which five or six months' rent will discharge--has the right to sell the estate absolutely to the first man he meets who will pay the amount of incumbrance, without any attempt to get a larger price for it, would in our opinion be equivalent to saying fraud and oppression shall be protected and encouraged.

*Id.* at 129.

Here, however, there is no indication that the HOA approached only LVDG and sold the property for only the amount of its debt with no attempt to obtain a larger price.  To the contrary, the complaint alleges the sale was conducted pursuant to Chapter 116, including § 116.31164. (Dkt. #1-1 at 7.)  Pursuant to § 116.31164(2), the HOA "may sell the unit at public auction to the highest cash bidder."  Thus, the complaint alleges the HOA properly noticed and held a public auction and sold the property to the highest cash bidder at that sale.  Neither the complaint nor the publicly recorded documents suggest any sort of collusion between the HOA and LVDG to sell the property in a private transaction with only one potential bidder for the lowest amount that would satisfy the HOA's debt.  Moreover, Wells Fargo has not addressed other factors that would bear on the equities, such as its own inaction in the face of the HOA foreclosure notices.

While there may be some basis to set aside the sale after further discovery, there is no basis to dismiss the quiet title claim on the ground that the HOA sale was commercially unreasonable.  I therefore deny this portion of the motion to dismiss.

### B. Unjust Enrichment

Count two of the complaint alleges Wells Fargo, National Default Servicing, and HUD were unjustly enriched.  Wells Fargo argues this claim fails because LVDG did not allege what benefits LVDG conferred on Wells Fargo or how Wells Fargo accepted and retained those benefits.  LVDG responds that it alleges Wells Fargo purported to sell the property for over

$200,000 and then recovered insurance proceeds from HUD after transferring the property to HUD. LVDG argues that if it does not recover title to the property, then the money Wells Fargo received from the foreclosure sale belongs to LVDG.

"[U]njust enrichment occurs whenever a person has and retains a benefit which in equity and good conscience belongs to another." *Mainor v. Nault*, 101 P.3d 308, 317 (Nev. 2004) (en banc), *as corrected on denial of reh'g* (Apr. 13, 2005). The complaint alleges that LVDG "expended significant funds and resources in connection with the acquisition and maintenance of the Property." (Dkt. #1-1 at 13.) LVDG further alleges that if title does not vest in LVDG, then the defendants "will obtain substantial benefits from the funds and resources expended by [LVDG]." (*Id.*) The complaint also alleges that Wells Fargo "sold the Property for significant monetary gain," and those proceeds "rightfully belong" to LVDG. (*Id.*)

LVDG has not stated an unjust enrichment claim based on the funds Wells Fargo received from selling the property because LVDG has not alleged it conferred a benefit on Wells Fargo through that payment. Rather, HUD conferred a benefit by purchasing the property. LVDG alleges it expended funds to acquire the property at the HOA foreclosure sale and to maintain the property. If any of the HOA sale proceeds were distributed to Wells Fargo, and if LVDG does not quiet title in itself, then it has stated a claim that it conferred a benefit on Wells Fargo that in equity and good conscience belongs to LVDG because it paid for a property it did not receive. Additionally, if LVDG has expended funds to maintain the property, and if LVDG does not quiet title in itself, then it has stated a claim that it conferred a benefit on Wells Fargo that in equity and good conscience belongs to LVDG because it maintained property that served as the security for the debt owed to Wells Fargo. Wells Fargo thereafter sold the property without having to pay those interim maintenance costs to protect its security interest. I therefore grant in part and deny in part Wells Fargo's motion to dismiss the unjust enrichment claim.

LVDG has not explained how it conferred a benefit on defendant National Default Servicing. I therefore grant National Default Servicing's motion to dismiss the unjust enrichment claim against it.

## C. Equitable Mortgage

Count three of the complaint seeks an equitable mortgage against Wells Fargo and the former owners of the property. Wells Fargo argues this claim fails because there is no agreement between Wells Fargo and LVDG that would support such a claim. LVDG argues that to the extent it does not recover title to the property, then on equitable grounds any damages should be secured by the property.

There is no basis to impose an equitable mortgage. An equitable mortgage may be imposed where "the parties intended to create a mortgage." *Topaz Mut. Co. v. Marsh*, 839 P.2d 606, 612 (Nev. 1992). There is no allegation in the complaint that LVDG and Wells Fargo (or any other party) agreed or intended to impose a mortgage on the property in favor of LVDG. I therefore dismiss this claim.

## D. Slander of Title

Count four alleges a slander of title claim against Wells Fargo, National Default Servicing, HUD, Evergreen, and the Yfantis Defendants. Wells Fargo moves to dismiss this claim because there is no malice, as Wells Fargo had reasonable grounds to believe that it had a claim to the property before the Supreme Court of Nevada issued *SFR*. LVDG responds that the complaint's allegations must be accepted as true and it would only be Wells Fargo's misinterpretation of the law that would support its belief that it had a valid first deed of trust. LVDG argues that Wells Fargo's bare assertion of a lack of malice does not warrant dismissal.

"Slander of title involves false and malicious communications, . . . disparaging to one's title in land . . ., and causing special damage." *Higgins v. Higgins*, 744 P.2d 530, 531 (Nev. 1987) (internal citation omitted). Under Federal Rule of Civil Procedure 9(b), malice "may be alleged generally."

I must take the complaint's allegations as true at the motion to dismiss stage and LVDG may allege malice generally. LVDG has alleged the defendants caused documents to be recorded that disparaged LVDG's title to the property even though the HOA foreclosure sale extinguished the deed of trust, Wells Fargo knew of that sale because the proper notices were given, and Wells

1   Fargo knew or should have known that its security interest would be extinguished by the HOA

2   sale. (Dkt. #1-1 at 7, 9, 14-15.)  LVDG also alleges the defendants acted with the intent to harm

3   LVDG or in conscious disregard for LVDG's rights, and those acts were "therefore done with

4   either express or implied malice." (*Id.* at 15.)   LVDG has stated a plausible slander of title claim.

5   I therefore deny Wells Fargo's motion to dismiss this claim.

6   **E.  Conversion**

7   Count five of the complaint asserts a conversion claim against Wells Fargo and National

8   Default Servicing.  Wells Fargo argues this claim must be dismissed because real property cannot

9   be converted and the claim is barred by the statute of limitations.  LVDG responds that it alleges

10  Wells Fargo received money belonging to LVDG when Wells Fargo sold the property, so the

11  conversion claim should not be dismissed.

12  To state a conversion claim, LVDG must allege that Wells Fargo and National Default

13  Servicing "wrongfully exerted [dominion] over personal property in denial of, or inconsistent

14  with, title or rights therein or in derogation, exclusion or defiance of such rights." *Winchell v.*

15  *Schiff*, 193 P.3d 946, 950 (Nev. 2008) (quotation omitted).  A claim for conversion must be

16  brought within three years. Nev. Rev. Stat. § 11.190(3)(c).

17  LVDG's conversion claim is time-barred.  According to the complaint, Wells Fargo sold

18  the property at the foreclosure sale on June 6, 2011. (Dkt. #1-1 at 10.)  The complaint was filed

19  more than three years later, on May 18, 2015. (*Id.* at 3.)  I therefore dismiss the conversion claim.

20  **F.  Wrongful Foreclosure**

21  Count six of the complaint asserts a claim for "Equitable Relief - Wrongful Foreclosure."

22  (Dkt. #1-1 at 16-17.)  Wells Fargo contends that this claim is time-barred under NRS

23  § 107.080(5).  LVDG responds that its claim is not time-barred because Wells Fargo's

24  foreclosure sale was void ab initio.  Additionally, LVDG argues that the applicable statute of

25  limitations is five years from the last time it held title to or possessed the property under NRS

26  § 11.080.

27

28

LVDG's wrongful foreclosure claim is not based on a violation of § 107.080's procedural aspects of foreclosure, and thus § 107.080(5)'s limitation period does not apply. Rather, LVDG contends Wells Fargo had no authority to conduct the foreclosure sale because its security interest in the property had been extinguished.

LVDG's claim is akin to a tortious wrongful foreclosure claim, which "challenges the authority behind the foreclosure, not the foreclosure act itself." *McKnight Family, L.L.P. v. Adept Mgmt. Servs., Inc.*, 310 P.3d 555, 559 (Nev. 2013) (en banc). LVDG's complaint refers to this claim as "equitable relief," which it seeks based on its position that the deed of trust was void by the time Wells Fargo attempted to exercise the power of sale. For relief on this claim, LVDG seeks a declaration that Wells Fargo's sale of the property is void. This claim is duplicative of LVDG's quiet title claim and I therefore dismiss it as redundant.

### G. Equitable Rescission

Count seven requests equitable relief in the form of rescission of Wells Fargo's foreclosure sale. Wells Fargo argues this claim fails because rescission is a remedy available only to parties to a contract, and LVDG is not a party to the contract between Wells Fargo and HUD or between HUD and the Yfantis defendants. Wells Fargo also argues LVDG failed to request rescission within a reasonable time. LVDG responds that it mislabeled this claim, which is one for equitable relief in the form of unwinding Wells Fargo's foreclosure sale. I dismiss this claim as duplicative of the quiet title claim.

### H. Policy Arguments

Wells Fargo contends that the Supreme Court of Nevada's interpretation of the relevant statutes in *SFR* violates Nevada and federal public policy. LVDG responds that this court cannot ignore the *SFR* decision, and that *SFR* rejected Wells Fargo's policy arguments. Wells Fargo's policy arguments provide no legal basis for dismissing the complaint. I therefore deny Wells Fargo's motion on this basis.

/ / / /

/ / / /

1

**II.  CONCLUSION**

2      IT IS THEREFORE ORDERED that defendant Wells Fargo's motion to dismiss **(Dkt.**

3  **#13) is GRANTED in part and DENIED in part**.  I dismiss LVDG's claims for wrongful

4  foreclosure, equitable mortgage, conversion, and rescission.  I dismiss the unjust enrichment

5  claim against defendant National Default Servicing Corporation.  I dismiss that portion of the

6  unjust enrichment claim against defendant Wells Fargo based on the money Wells Fargo received

7  for selling the property.  I deny the motion in all other respects.

8      DATED this 24th day of March, 2016.

9

10                                              _____
                                               ANDREW P. GORDON
11                                             UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28